[Civ. No. 51613. Second Dist. Div. One. Apr. 21, 1978.]

ROBERT H. STEWART, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE,
Defendant and Respondent.

**Counsel**

Ritter & Ritter and Minton Ritter for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Roy S. Liebman, Deputy Attorney General, for Defendant and Respondent.

**Opinion**

HANSON, J.—Robert H. Stewart, a medical doctor, appeals from an order of the superior court granting a new trial on grounds of an error in law in a mandamus proceeding (Code Civ. Proc., § 1094.5) instituted by Dr. Stewart against the Board of Medical Quality Assurance, Department of Consumer Affairs, State of California (hereinafter referred to as the Board).

### The Case

The chronology of events is as follows:

On February 10, 1976, the Board filed an accusation charging Dr. Stewart with committing in the practice of medicine acts and omissions which constituted gross negligence and incompetence and resulted in the

death of a patient. Dr. Stewart filed a timely notice of defense (Gov. Code, §§ 11505, 11506).

The Board assigned the matter to an administrative law judge of the Office of Administrative Hearing, Helen L. Gallagher (hearing officer), who presided alone at the hearing held May 10 and 11, 1976, made findings of fact and determinations of law, and issued her proposed decision to the Board. The proposed decision incorporated findings that Dr. Stewart had committed the acts and omissions charged which constituted incompetence in the practice of medicine and it recommended, inter alia, the revocation of his medical certificate with the revocation to be stayed and a five-year probationary period imposed upon his successfully passing an oral examination to be administered to him by the Board.

On July 19, 1976, the Board adopted the decision of the administrative law judge as its own.

On or about July 23, 1976, Dr. Stewart filed a petition for reconsideration which was not granted prior to the effective date of the Board's decision and was thus deemed denied by operation of law on August 19, 1976 (Gov. Code, § 11519, subd. (a)).

On August 26, 1976, Dr. Stewart filed a petition for writ of mandate to set aside the Board's decision in the superior court, which issued its order to show cause why the writ should not issue.

On October 8, 1976, trial was held on the mandamus proceedings. At its conclusion the superior court granted the writ setting aside the Board's decision on the ground that Business and Professions Code section 2123.9 required the administrative hearing to be "held by the committee or panel thereof" rather than a single administrative law judge.

The Board thereafter made a motion for new trial on the basis that the court had improperly interpreted and applied the law with respect to the hearing procedure (Code Civ. Proc., § 657, subd. 7) and that motion was heard November 24, 1976.

The trial court, following oral argument and a review of the disciplinary law controlling physicians, ruled that an error in law had

occurred and on that basis the motion for new trial was granted. In granting the motion for new trial, the court reasoned that: "[B]usiness and Professions Code section 2123.9 providing for hearings by committees and panels does not deprive the division of Medical Quality of the right to conduct a hearing through a hearing officer under the administrative procedure act and to discipline physicians under Business and Professions Code section [sic] 2361, 2364 and 2372." Since the petition for writ of mandate had never been heard on its merits, the superior court reset the matter for hearing on January 10, 1977.

Dr. Stewart has appealed from the above superior court's ruling that the above referred to code section does not deprive the division of medical quality of the right to conduct a hearing through a hearing officer under the Administrative Procedure Act.

ISSUE

Since the petition for writ of mandate was never heard on the merits, the sole issue on this appeal is whether the Board was authorized under the statutory scheme regulating disciplinary hearings pertaining to physicians to designate an administrative law judge (hearing officer) to preside alone at a disciplinary hearing and to issue a proposed decision to the Board.[1]

DISCUSSION

We are called upon to interpret the provisions of article 2.3 of the State Medical Practice Act (Bus. & Prof. Code, §§ 2123-2124.45)[2] newly enacted in 1975. This article designated "Medical Quality Review Committees" was effective at the time these proceedings were conducted in 1976 (see Stats. 1975, Second Ex. Sess., ch. 2, § 1.05 et seq., p. 3981, operative Dec. 12, 1975). It was the expressed legislative intent by this article to establish a system of medical quality review committees (§ 2123).

---

[1]Respondent Board in its motion for new trial alleged that the trial court's ruling that the procedure originally utilized by the Board was invalid would "necessitate the retrial of over eighty cases wherein hearings on physician discipline cases were held by hearing officers after December 12, 1975 and wherein the Board subsequently adopted the hearing officer's proposed decision as its final decision."

[2]Unless otherwise indicated, all statutory references are to the Business and Professions Code.

Prior to the effective date of the new legislation the Board of Medical Examiners was required by statute to establish district review committees, each consisting of five "persons . . . who hold valid physicians and surgeons certificates." (See former § 2123.2, repealed Stats. 1975, Second Ex. Sess., ch. 1, § 13, p. 3956.) These committees were assigned matters by the Board of Medical Examiners and heard contested cases, but the preliminary hearing in each instance was conducted by a hearing officer in accordance with the provision of the Administrative Procedure Act (Gov. Code, § 11500 et seq.). The hearing officer who presided at the hearing was thereafter required to be present during the committee's consideration of the case, and it was the committee which prepared a proposed decision and transmitted it to the Board. Decisions of the Board were thus prepared by the same procedure as the proposed decision of a hearing officer under Government Code section 11517, subdivisions (b) and (c). (See, e.g., art. 2.3, §§ 2123-2124.45 as of 1975.)

During 1975 the Board of Medical Quality Assurance, which replaced the Board of Medical Examiners, was established under the Department of Consumer Affairs. The new board consisted of three divisions: a division of medical quality, a division of licensing, and a division of allied health professions (§ 2100.5) and it was the division of medical quality which was assigned responsibility for reviewing quality of medical practice and carrying out disciplinary action (§ 2100.6). The medical quality review committees established by article 2.3 were to operate under the jurisdiction of the "Division of Medical Quality of the Board of Medical Quality Assurance" (§ 2123). The composition of these committees, which ranged in size from 10 to 20 members and represented 14 different districts, was specified in section 2123.3. That section authorized the medical quality review committees to establish smaller panels of five committee members (three physician members, one public member, and one member licensed by the healing arts board other than the Board of Medical Quality Assurance) "for the purposes of hearing and deciding cases before a committee." (§ 2123.3.)

The fulcrum of this appeal is the interpretation of section 2123.9 which is entitled "Conduct of hearings; law governing; contested cases; duties of hearing officer." That section provides, in pertinent part, as follows: "*Except as otherwise provided in this article,* all hearings shall be conducted by . . . a committee or panel of a committee in accordance with the provisions of Chapter 5 (commencing with Section 11500), Part 1, Division 3, Title 2 of the Government Code." (Italics added.) The

question is whether it was the legislative intent by that language to require that hearings be conducted *exclusively* by committee or whether the new legislation contemplated, as an *alternative,* the delegation of responsible duties to an administrative law judge (hearing officer) pursuant to the already existing established procedure set forth in the California Administrative Procedure Act.

■ On passing upon this issue this court adverts to those well established rules of statutory construction which require first and foremost that the statutory scheme be given a reasonable and practical interpretation. (*Fortenberry* v. *Weber* (1971) 18 Cal.App.3d 213 [95 Cal.Rptr. 834].) It is the golden rule of statutory construction that where several alternatives exist that interpretation which appears the most reasonable shall be favored. (*Samarkand of Santa Barbara, Inc.* v. *County of Santa Barbara* (1963) 216 Cal.App.2d 341 [31 Cal.Rptr. 151].) "Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. (*Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045]; *People* v. *Sciortino* (1959) 175 Cal.App.2d Supp. 905, 908-909 [345 P.2d 594].) Words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law. (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 [330 P.2d 888].) . . ." (*Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 603-604 [130 Cal.Rptr. 110].)

■ With respect to the statutes presented for interpretation in the present case, we are further reminded of the elementary rule of statutory construction which dictates that effect be given, if possible to every word, clause and sentence. (*Soby* v. *Workman's Comp. Appeals Bd.* (1972) 26 Cal.App.3d 555 [102 Cal.Rptr. 727].) As a corollary, a statute should be construed so that effect is given to all its provisions, leaving no part superfluous or inoperative, void or insignificant and so that one section will not destroy another. (*Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222 [111 Cal.Rptr. 398].)

■ Keeping these rules in mind and viewing article 2.3 within the framework of the entire State Medical Practice Act, it becomes abundantly clear that the Legislature did not intend that the medical quality review committees thereby established were to constitute the *exclusive* disciplinary forum nor that the use of a hearing officer acting alone pursuant to the Administrative Procedure Act should be foreclosed.

The introductory clause of section 2123.9 declares that "except as otherwise provided . . . ," hearings shall be conducted in accordance with the provisions of article 2.3. It is the essential function of this language to modify all provisions which follow. The following sections establish the procedures to be followed by medical quality review committees in performing their functions. However, these sections neither designate the review committees to be the exclusive forum for the conduct of hearings nor appear to consider or designate alternative forums. If we interpret article 2.3 to vest the power to conduct disciplinary proceedings solely with a committee or a panel selected by the committee, the words "except as otherwise provided" are superfluous. Furthermore, those additional sections of the State Medical Practice Act which vest other tribunals with power to conduct disciplinary proceedings against physicians,[3] would, if section 2123.9 vested sole disciplinary power in a committee, become meaningless. This result is abhorrent to the rules of statutory construction heretofore set forth.

The more reasonable interpretation of the language of section 2123.9 is that the medical quality review committees are required to comply procedurally with the Administrative Procedure Act except in situations where the specific provisions of article 2.3 are more specific or are inconsistent therewith. The Administrative Procedure Act is specifically made applicable to the discipline of physicians by the Board (Gov. Code, § 11501, subd. (b)); the medical quality review committee has alternative jurisdiction. Since a special statute dealing with a particular subject takes precedence over a general statute relating to the same subject (*In re Williamson* (1954) 43 Cal.2d 651 [276 P.2d 593]), the special statute constitutes an exception which is paramount to the general statute. (*People* v. *Cooper* (1944) 64 Cal.App.2d Supp. 946 [149 P.2d 86].) For instance sections 2123.10 and 2124.1 relate to the finality of administrative decisions while the same subject matter is incorporated in Government Code sections 11517 and 11521. Since article 2.3 is a special statute, presumably sections 2123.10 and 2124.1 supersede this procedure as to the newly established medical quality review committees.

The history of the enactment also supports this interpretation. A number of sections in addition to those incorporated in article 2.3 were proposed by Assembly Bill No. 1 (Stats. 1975, Second Ex. Sess., ch. 1, § 14, pp. 3956-3962) to be added to the State Medical Practice Act,

---

[3] See, for example, sections 2372, 2372.5, 2360, and 2324 hereinafter discussed.

including section 2100.6, subdivision (c), and certain sections of article 13, among them sections 2372 and 2372.5. Each of these sections as originally proposed was devoid of reference to the use of a hearing officer as an alternative. Section 2100.6 originally provided that the division of medical quality was to be responsible for "[c]arrying out disciplinary action appropriate to findings made by a medical quality review committee of the division," while section 2372 provided for disciplinary action by a committee or panel where a physician had been found guilty and section 2372.5 described the authority of the committee to impose probation. In none of the three foregoing sections was specific reference made to the use of a hearing officer as an alternative to the committee.

When the legislation was submitted to the Senate, various amendments were made thereto and with these amendments the bill was ultimately enacted into law. (Stats. 1975, Second Ex. Sess., ch. 2, § 1.05 et seq., p. 3981.) These amendments are significant for purposes of interpretation in the present case because in each instance reference to use of a hearing officer was incorporated. At the end of section 2100.6, subdivision (c), the words "a hearing officer, or the division" were added (Stats. 1975, Second Ex. Sess., ch. 2, § 1.02, p. 3980); the words "hearing officer" were also added to sections 2372 (Stats. 1975, Second Ex. Sess., ch. 2, § 1.14, p. 3986) and 2372.5 (Stats. 1975, Second Ex. Sess., ch. 2, § 1.15, p. 3987).

Furthermore, it is apparent from the contents of article 13, entitled "Denial, Suspension and Revocation," that hearing officers are accorded authority coextensive with that exercised by committees or panels. The division of medical quality is required thereunder to take action against any certificate holder who engages in the enumerated acts which constitute unprofessional conduct. (§ 2361.) In such actions the licenses of physicians are subject to disciplinary suspension or revocation and hearings must be conducted in accordance with the Administrative Procedure Act (§§ 2360, 2324). The Administrative Procedure Act, in turn, provides that every hearing in a contested case shall be presided over by a hearing officer, and that the agency (the Board in the present case) shall determine whether the hearing officer is to hear the case sitting alone or sitting with the agency itself. (Gov. Code, § 11512, subd. (a).) Sections 2372 and 2372.5 are found in article 13. Section 2372 thereof specifies that a certificate holder may be found guilty by a "committee, panel or hearing officer thereof." Section 2372.5 extends

authority to place a certificate holder on probation by the "Division of Medical Quality, a committee, or a hearing officer thereof." We do not perceive the use of the word "thereof" as limiting the person who acts as hearing officer to one who is a member of the committee or panel, the interpretation for which Dr. Stewart argues on appeal.

We are admonished to gather the legislative intent from the whole act rather than from its isolated parts and to attempt to give effect to the object the enactment sought to achieve. (*Rushing* v. *Powell, supra,* 61 Cal.App.3d 597, 604.) In so doing we have reviewed the provisions of the Medical Practice Act as it existed in 1976 and we note that it provided several alternatives for the conduct of disciplinary proceedings, all within the authority of the division of medical quality. The division of medical quality could either sit with a hearing officer (§ 2364; Gov. Code, § 11512, subd. (a)) or delegate the authority to make findings to a hearing officer sitting alone. (§§ 2360, 2361; Gov. Code, § 11512, subd. (a).) Alternatively, the case could be assigned to a medical quality review committee sitting with a hearing officer (§§ 2123, 2123.9; Gov. Code, § 11512, subd. (a)) or could be delegated to a panel of a medical quality review committee which would sit with a hearing officer. (§§ 2123.2, 2123.9; Gov. Code, § 11512, subd. (a).) Our conclusion that the hearing officer was, at the time the present case was heard, an independent authority entitled to receive from the Board the delegation of authority to hear the case alone is founded on the legislative intent, the history of the legislation, and our reading of article 13 which clearly assigns specific powers to the hearing officer alone. Implicit in the authority to make findings, which may clearly be delegated to hearing officers pursuant to the Administrative Procedure Act, is the power of the hearing officer to preside alone at disciplinary proceedings when such authority is delegated by the agency.

Dr. Stewart further contends on appeal that the trial court improperly considered the affidavit of Assemblyman Barry Keene which was inadmissible. The trial court accepted and considered the affidavits of Senator Alan Robbins and Assemblyman John Collier of the California Legislature, both of whom voted on the bills presented in their respective houses, together with the affidavit of Assemblyman Barry Keene who authored the original bill. The Keene affidavit declares that it was the intent of the combined legislation (Assem. Bill No. 1 and Sen. Bill No.

24 sometimes referred to as the Keene Act) that hearings should be conducted by medical quality review committees or their panels in accordance with the Administrative Procedure Act except where specific modifications in that procedure were made, but that there was no intent that the committees should preclude the Board from using the established procedure of delegating authority to a hearing officer sitting alone pursuant to the Administrative Procedure Act. The affidavits of Senator Robbins and Assemblyman Collier declared, to the contrary, that the legislative intent was to replace the single hearing officer with a committee or panel pursuant to the procedure set forth in the Keene Act.

■ In statutory construction various aids to determine legislative intent have been utilized by courts since "[i]t is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers." (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17].) In so doing, the court is entitled to consider the affidavits of the author of the subject legislation. (*Campbell* v. *Board of Dental Examiners* (1975) 53 Cal.App.3d 283 [125 Cal.Rptr. 694]; see also *Chapman* v. *Federal Power Comm'n.* (1953) 345 U.S. 153 [97 L.Ed. 918, 73 S.Ct. 609].) Statements of individual legislators are not inadmissible; the issue is merely one of the weight which these may be accorded. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 258 [104 Cal.Rptr. 761, 502 P.2d 1049].) Similarly the digests of legislative counsel are of interest but not, as Dr. Stewart argues, controlling. While we do not rely on the affidavit of Assemblyman Keene to sustain our interpretation, it is noteworthy that his statement of legislative intent is in accord with the construction derived from the statute by this court applying basic rules of statutory construction.

■ Finally, contrary to the contention of Dr. Stewart, we are not called upon herein to consider a penal statute. "The revocation or suspension of a license is not penal, but rather, the Legislature has provided for such to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty and integrity." (*Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 331 [308 P.2d 924].)

## DISPOSITION

The judgment (order granting the motion for a new trial) is affirmed. The matter is remanded to the superior court for a hearing on the merits.

Wood, P. J., and Lillie, J., concurred.