[Civ. No. 19392. Fourth Dist., Div. Two. Dec. 26, 1978.]

CEMETERY BOARD OF THE STATE OF CALIFORNIA,
Plaintiff and Appellant, v.
TELOPHASE SOCIETY OF AMERICA et al.,
Defendants and Respondents.

848

## COUNSEL

Evelle J. Younger, Attorney General, and Alvin J. Korobkin, Deputy Attorney General, for Plaintiff and Appellant.

Tom Sherrard for Defendants and Respondents.

## OPINION

**KAUFMAN, Acting P. J.**—Defendant, Telophase Society of America (hereafter Telophase or defendant[1]), is in the business of incinerating or

---

[1]Several individuals were also named as defendants, but the trial court found that all acts of the individual defendants were performed as agents for Telophase, and no

cremating human remains. Plaintiff, Cemetery Board (hereafter Board or plaintiff), is a statewide administrative agency charged with administering and enforcing the Cemetery Act (Bus. & Prof. Code, § 9600 et seq.) and Parts 1, 3 and 5 of Division 8 of the Health and Safety Code (§ 8100 et seq.) relating to cemeteries. Board instituted this action to enjoin Telophase from (1) "*[m]aking any interments* or *performing any cremations*" or (2) "*[o]perating the cemetery* known as Cremar Cemetery . . . or cremating the bodies of deceased persons at said location without a valid, subsisting and unsuspended certificate of authority issued by" Board. (Emphasis added.) The trial court found that Telophase does not perform cremations as that term is statutorily defined, does not make interments as that term is statutorily defined, and is not operating a cemetery within the statutory definitions of that term. It therefore concluded that Telophase was not unlawfully doing or threatening to do any of those things without a certificate of authority issued by Board, and denied issuance of the injunctions. Board appeals. A consideration of the pertinent statutory provisions, which are almost nonsensical in several important respects, demonstrates that the trial court's conclusions were sound.

Before turning to the statutory language, a brief statement of the pertinent facts is appropriate. In 1974, defendant acquired Cremar Crematory by leasing the building and grounds and purchasing the retorts (furnaces) and contents of the building. The crematory is situated on land dedicated for cemetery purposes and had previously been operated in connection with an adjacent existing cemetery. Defendant is involved in providing what it calls "simple cremation services" as an alternative to the more costly services provided by the mortuary-funeral-cemetery system. Several different entities are involved in providing these services, which include several steps. While the details have varied over time, the general process is as follows: Another entity, Telomega, Inc., pursuant to a contract with defendant, registers persons in advance for the service, picks up decedents at the place of death, transports the bodies to a repository, and processes the necessary paperwork. Upon payment by the decedent's survivors of an agreed fee ($250) if the fee has not been prepaid, Telomega transports the bodies, along with death certificates and disposal permits, to defendant's crematory facility. Telomega performs these precremation activities in San

---

separate issue is presented as to these defendants. For the sake of simplicity, the designation defendant refers to defendant Telophase unless otherwise indicated.

Diego and Orange Counties; in San Fernando Valley they are performed by Garrity Associates; and in Los Angeles County defendant performs them directly. The bodies are incinerated by defendant at the crematory, and the cremated remains are, in the vast majority of cases, transferred to the San Diego Ecumenical Conference, which scatters the ashes at sea.[2] Under a mutual understanding, defendant donates $200 per month to the Conference. In the remaining cases, the cremated remains generally are either picked up by the survivors or forwarded to a cemetery designated by the survivors for interment.

In April 1974, because the Cemetery Board was asserting jurisdiction to require defendant to obtain a certificate of authority to operate its business, it filed an application for a certificate of authority. Following an administrative hearing, the Board denied defendant's application.[3] A principal reason given for the denial was that defendant's facilities did not include a columbarium or burial park as assertedly required by Health and Safety Code section 8340.[4]

Board relies primarily on Business and Professions Code section 9768 which provides in relevant part: "It is a misdemeanor for any *cemetery corporation* to make any *interments* or *perform any cremations* without a valid, subsisting and unsuspended certificate of authority." (Italics added.) The trial court concluded that under the statutory definitions Telophase is not a cemetery corporation, does not make interments and does not perform cremations. We agree.

■ Health and Safety Code section 7009 defines interment as follows: " 'Interment' means the disposition of human remains by inurnment,

---

[2]Churches, religious corporations and religious societies or denominations are specifically excluded from coverage by the Cemetery Act. (Bus. & Prof. Code, § 9609.)

[3]In 1974, the Board consisted of six members, two of whom were public members not permitted to be involved in the industry and four were members of the funeral industry. (See Stats. 1971, ch. 716, p. 1428, §§ 159, 160.) In 1976, domination of the Board by representatives of the industry was eliminated by the Legislature when it amended Business and Professions Code section 9625 to provide that four of the six members of the Board must be public members not involved in the industry. (Bus. & Prof. Code, § 9625 [Stats. 1976, ch. 1188, p. 5357, § 58]; Bus. & Prof. Code, § 9626.)

[4]Health and Safety Code section 8340 reads: "No crematory shall conduct, or shall hereafter be constructed, established, or authorized to conduct, any business unless there is in connection therewith in the same fireproof building or structure or in a separate fireproof building *within the same cemetery*, either:

"A columbarium, a burial park or mausoleum amply equipped at all times for the interment of remains of bodies cremated at the crematory." (Italics added.)

The purpose of this statutory provision and its relevance to this appeal are discussed *infra*.

entombment, or burial in a cemetery or, in the case of cremated remains, by inurnment, entombment, burial or burial at sea as provided in Section 7117." " 'Inurnment' means placing cremated remains in an urn and placing it in a niche." (Health & Saf. Code, § 7011.) " 'Niche' means a space in a columbarium used, or intended to be used, for inurnment of cremated human remains." (Health & Saf. Code, § 7016.) The trial court found that defendant does not make interments, and that finding is supported by substantial evidence. Defendant accepts remains for cremation only where arrangements have been made for disposition by other persons or entities elsewhere, primarily by burial at sea by the San Diego Ecumenical Conference. (See text accompanying fn. 2, *ante.*)

■ Although concededly Telophase operates a crematory as defined in Health and Safety Code section 7006,[5] and incinerates human remains, it does not perform cremations within the statutory definition. Health and Safety Code section 7010 reads: " 'Cremation' means the reduction of the body of a deceased person to cremated remains in a crematory *and* the placement of the cremated remains in a grave, vault or niche or burial at sea as provided in Section 1717 of this code." (Italics added.)

Since it neither makes interments nor performs cremations, Telophase is not in violation of Business and Professions Code section 9768 whether it is a cemetery corporation or not. ■ However, the trial court concluded it was not, and we agree. In its original articles of incorporation, the stated primary purpose of the corporation was "to conduct any one or more or all of the businesses of a cemetery." But on February 10, 1976, the articles of incorporation were amended to delete the former primary purpose and to substitute therefor "to reduce dead human bodies directly to cremated remains." Health and Safety Code section 7019 defines "cemetery corporation" as meaning "any corporation now or hereafter organized which is or may be authorized by its articles to conduct any one or more or all of the business of a cemetery. . . ." Cremating human remains without interment is not within the definition of "cemetery business" as set forth in Health and Safety Code section 7020.[6] Thus, Telophase is not a cemetery corporation within the statutory definition of that term.

[5]Health and Safety Code section 7006 reads: " 'Crematory' means a building or structure containing one or more furnaces for the reduction of bodies of deceased persons to cremated remains."

[6]Section 7020 reads: " 'Cemetery business,' 'cemetery busineses,' and 'cemetery purposes' are used interchangeably and mean any and all business and purposes requisite

There can be no question but that the court properly denied Board's request to enjoin defendant from "making any interments" or "performing any cremations" without a certificate of authority. ■ We turn then to the propriety of the court's denial of Board's request that defendant be enjoined from "operating the cemetery known as Cremar Cemetery. . . ."

The starting point is Business and Professions Code section 9715 which provides: "Application for a certificate of authority shall be made in writing on the form prescribed by the board and filed at the principal office of the board. Such application shall be accompanied by the fee provided for in this act and must show that the cemetery authority[7] owns or is actively *operating a cemetery* in this State *which is subject to the provisions of the Cemetery Act* or that the applicant is in a position to commence operating a cemetery." (Italics added.) The question is then simply whether Telophase owns or is actively operating a cemetery subject to the provisions of the Cemetery Act.

Cemetery is defined at two places in the Health and Safety Code. Section 8100 is obviously inapplicable. It reads: "Six or more human bodies being buried at one place constitute the place a cemetery." Neither is the definition found in section 7003, which provides: " 'Cemetery' means any one, or a combination of more than one, of the following, *in a place used, or intended to be used, and dedicated, for cemetery purposes*: [¶] (a) A burial park, for earth interments. [¶] (b) A mausoleum, for crypt or vault interments. [¶] (c) *A crematory,* or a crematory and columbarium, *for cinerary interments.*" (Italics added.) Whether or not a crematory can constitute "[a] crematory . . . for cinerary interments" when the operator of the crematory is making no interments need not be decided. Telophase's crematory is not "in a place used, or intended to be used, and dedicated, for cemetery purposes."

to, necessary for, or incident to, establishing, maintaining, operating, improving, or conducting a cemetery, interring human remains, *and* the care, preservation, and embellishment of cemetery property, including, but not limited to, any activity or business designed for the benefit, service, convenience, education, or spiritual uplift of property owners or persons visiting the cemetery." (Italics added.) The meaning and coverage of this section is discussed at length, *infra.*

[7]Health and Safety Code section 7018 reads: " 'Cemetery authority' includes cemetery association, corporation sole, or other person owning or controlling cemetery lands or property."

"Cemetery purposes" is defined in Health and Safety Code section 7020, set forth in full in footnote 6, *ante*. Its essential language is: " '[C]emetery purposes . . . mean[s] any and all business and purposes requisite to . . . or incident to, establishing, maintaining, operating, improving, or conducting a cemetery, interring human remains, *and* the care, preservation, and embellishment of *cemetery property,* including . . . any activity . . . designed for the benefit, . . . convenience, education, or spiritual uplift of *property owners* or persons *visiting the cemetery.*" (Italics added.)

As is all too apparent, the statutory language is virtually nonsensical. The question under Business and Professions Code section 9715 is whether defendant is operating a cemetery. Health and Safety Code section 7003 purports to define cemetery in terms of "a place used, or intended to be used . . . for cemetery purposes." But "cemetery purposes" is defined in Health and Safety Code section 7020 by reference to "purposes . . . incident to . . . operating . . . a cemetery," and we are returned to the point of beginning. ▮ Nevertheless, no elaborate argument is required to demonstrate that Health and Safety Code section 7020 contemplates a cemetery in the traditional sense. Whatever "incident to . . . interring human remains" might mean in isolation, the section read in its entirety and taken in context with the numerous other statutory provisions having obvious reference to conventional cemeteries imparts an irresistible impression that section 7020 contemplates a conventional cemetery. Perhaps the single most significant indication in the language of the section itself is the use of the "and" after reference to "conducting a cemetery, interring human remains." If "and" is given its usual meaning, "cemetery purposes" must relate at least in part to "the care, preservation, and embellishment of cemetery property." This plus the reference to "property owners" and "visiting the cemetery" unmistakably indicate the section does not include the incineration of dead bodies without more.

It is suggested that notwithstanding that defendant performs no cremations within the statutory definition and makes no interments within the statutory definition and is not operating a cemetery within the statutory definitions, issuance of an injunction was compelled by Health and Safety Code section 8340 which prohibits operation of a crematory "unless there is in connection therewith in the same fireproof building or structure or in a separate fireproof building *within the same cemetery,* either: [¶] [a] columbarium, a burial park or mausoleum amply equipped

at all times for the interment of remains of bodies cremated at the crematory." (Italics added.) (See fn. 4, *ante*.)

The first and essential point to be observed is that this section is completely unrelated to the relief sought by Board. In essence, Board sought to enjoin defendant from "making any interments or performing any cremations without a certificate of authority" and from "operating the cemetery known as Cremar Cemetery" without a certificate of authority. As previously explained, the trial court was correct in concluding that defendant does not perform cremations, make interments or operate a cemetery. Section 8340 is entitled "Required facilities" and purports to require a crematory to have "within the same cemetery" a "columbarium, a burial park or mausoleum" "for the interment of remains . . . cremated at the crematory." Even if it were assumed that section 8340 is applicable to an operation such as that of Telophase and that Telophase is violating the section because it has no columbarium, burial park or mausoleum, the injunction sought by plaintiff was not to restrain Telophase from operating its crematory until such time as it should have a columbarium, burial park or mausoleum but, rather, until it should obtain a certificate of authority from the Cemetery Board.

■ Whether or not section 8340 applies to Telophase's operation is problematical. Its language "within the same cemetery" is again indicative that the Legislature had in mind the kind of cemetery where remains are interred. This is further indicated by the statutory definitions of "columbarium," "burial park" and "mausoleum" used in the section. " 'Burial park' means a tract of land for the burial of human remains in the ground, *used or intended to be used, and dedicated, for cemetery purposes.*" (Health & Saf. Code, § 7004; italics added.) As used in section 8340, " 'mausoleum' means a structure or building for the entombment of human remains in crypts or vaults *in a place used, or intended to be used, and dedicated, for cemetery purposes.*" (Health & Saf. Code, § 7005; italics added.) As used in section 8340 " 'columbarium' means a structure, room, or other space in a building or structure containing niches for inurnment of cremated human remains *in a place used, or intended to be used, and dedicated, for cemetery purposes.*" (Health & Saf. Code, § 7007; italics added.) Not only are we again brought face to face with the nondefinition of "cemetery purposes" in Health and Safety Code section 7020 discussed previously, but we have already concluded that defendant's crematory is not "in a place used, or intended to be used, and dedicated, for cemetery purposes."

Additionally, there is a significant probability that section 8340 would be rendered unconstitutional as violative of due process if applied to Telophase's operation. The requirement of a columbarium, burial park or mausoleum in connection with the crematory was originally enacted in 1939 (Stats. 1939, ch. 60, p. 701, § 8340) at a time when the disposition of cremated remains at sea was not authorized. Thus, there was a necessity that a crematory have an appropriate place for the disposition of cremated remains. (See 55 Ops.Cal.Atty.Gen. 402, 406.[8]) That this was the impetus for the requirement in section 8340 that a crematory also have a columbarium, burial park or mausoleum is made clear by section 8341, the very next code section and the only other code section besides section 8340 in Article 5 of Chapter 2 of the Health and Safety Code which is entitled "OPERATION OF CREMATORIES." Prior to its amendment in 1965, section 8341 read: "All cremated remains not removed for interment elsewhere shall be interred in a plot within a reasonable time after cremation." (Stats. 1939, ch. 60, p. 702, § 8341.) However, in 1965, section 7117 was added to the Health and Safety Code authorizing burial of cremated remains at sea (Stats. 1965, ch. 1421, p. 3346, § 8) and in 1970 and 1973 section 7117 was amended to eliminate several restrictions on the manner in which such burial was required to be effected (Stats. 1970, ch. 707, p. 1335, § 1; Stats. 1973, ch. 339, p. 763, § 1). Since Telophase makes no interments and accepts bodies for cremation only where arrangement has been made for disposition elsewhere or for burial at sea, there is no longer any apparent rational basis for requiring a "columbarium, a burial park or a mausoleum amply equipped at all times for the interment of remains of bodies cremated" at its crematory. This question has not been briefed or argued by the parties, and there is no necessity for deciding it in this case. ■ However, it is a basic tenet of statutory construction that a court will not construe a statute in such a way as to make it vulnerable to constitutional attack. (*People* v. *Amor,* 12 Cal.3d 20, 30 [114 Cal.Rptr. 765, 523 P.2d 1173]; *In re Kay,* 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; *City of Los Angeles* v. *Belridge Oil Co.,* 48 Cal.2d 320, 324 [309 P.2d 417].)

[8]For the reasons previously stated in our analysis as to whether defendant was operating a cemetery as "cemetery" is defined by Health and Safety Code section 7003, we are unable to accept the unreasoned and unsupported opinion of the Attorney General that a crematory is a cemetery as there defined. (55 Ops.Cal.Atty.Gen. at p. 405.) The opinion neither considered nor discussed that only a crematory "for cinerary interments" can qualify as a cemetery under section 7003 and then only if it is "in a place used, or intended to be used, and dedicated, for cemetery purposes." Neither did it consider that "columbarium, or burial park or mausoleum" as used in section 8340 are all also statutorily restricted to such facilities "in a place used, or intended to be used, and dedicated, for cemetery purposes."

As the trial court correctly stated in its notice of intended decision, the statutory scheme simply did not envision an operation like Telophase's and therefore made no provision for it. We are not entirely unsympathetic to the suggestion that the cremation of dead bodies should not go unregulated. But whether or not it should be regulated and if it should, the nature and extent of its regulation are matters to be determined by the Legislature. ■ It is well established that it is not the proper function of the courts to supply legislative omissions from a statute in an attempt to make it conform to a presumed intention of the Legislature not expressed in the statutory language. (Code Civ. Proc., § 1858; *Moyer v. Workmen's Comp. Appeals Bd.,* 10 Cal.3d 222, 236 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Kirkwood v. Bank of America,* 43 Cal.2d 333, 341 [273 P.2d 532]; *In re Miller,* 31 Cal.2d 191, 199 [187 P.2d 722]; *Seaboard Acceptance Corp. v. Shay,* 214 Cal. 361, 367-369 [5 P.2d 882]; *Wisdom v. Eagle Star Ins. Co.,* 211 Cal.App.2d 602, 605 [27 Cal.Rptr. 599]; *Richardson v. City of San Diego,* 193 Cal.App.2d 648, 650 [14 Cal.Rptr. 494]; *Rudley v. Tobias,* 84 Cal.App.2d 454, 458 [190 P.2d 984].) In applying and explaining this principle, the court in *Rudley v. Tobias, supra,* said: "Relying on the so-called doctrine of judicial empiricism, the appellant insists that the appellate court should 'fill in the gaps' in the law, and, for reasons of public policy and in 'the interest of society as a whole,' sanction the action contended for. But judicial process is concerned with the interpretation and application of legislative intent, not with usurpation of the lawmaking function. The dangers of attempted interference by any one governmental division with matters committed to the jurisdiction of another division, whether executive, judicial, or legislative, are too obvious to require discussion." (84 Cal.App.2d at p. 458.)

Application of the rule of *casus omissus* is particularly appropriate in this case, for it obviates the necessity of embracing the absurdity that notwithstanding that defendant performs no cremations within the statutory definition and makes no interments within the statutory definition, and that its crematory is not a cemetery within either of the statutory definitions, it nevertheless is operating a cemetery subject to the provisions of the Cemetery Act. It further virtually insures prompt legislative attention to the question whether an operation such as that of Telophase should be regulated and to the problems presented by the incoherent and almost meaningless definitions contained in the statutes. Presumably, the Cemetery Board, to which the Legislature has entrusted

the enforcement of the statutory provisions (see Bus. & Prof. Code, §§ 9631, 9657, 9658) will have the legislative ear.

The judgment is affirmed.

McDaniel, J., concurred.

**MORRIS, J.**—I respectfully dissent.

The majority, having concluded that the statutory provisions regulating cemeteries, are "almost nonsensical," proceeds to render them so by focusing on the literal meaning of each word considered in isolation, and ignoring both the statutory scheme and the legislative purpose.

Admittedly the definitional sections contain ambiguities. However, in performing our judicial function, we should observe the well-established rules of statutory construction. The pertinent rules are summarized in *Stewart* v. *Board of Medical Quality Assurance* (1978) 80 Cal.App.3d 172, 179 [143 Cal.Rptr. 641], as follows:

"On passing upon this issue this court adverts to those well established rules of statutory construction which require first and foremost that the statutory scheme be given a reasonable and practical interpretation. [Citation.] It is the golden rule of statutory construction that where several alternatives exist that interpretation which appears the most reasonable shall be favored. [Citation.] 'Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. (*Cedars of Lebanon Hosp.* v. *County of L. A.* (1950) 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045]; *People* v. *Sciortino* (1959) 175 Cal.App.2d Supp. 905, 908-909 [345 P.2d 594].) Words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law. (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 [330 P.2d 888].) . . .' (*Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 603-604 [130 Cal.Rptr. 110].)

"With respect to the statutes presented for interpretation in the present case, we are further reminded of the elementary rule of statutory construction which dictates that effect be given, if possible to every word, clause and sentence. [Citation.] As a corollary, a statute should be

construed so that effect is given to all its provisions, leaving no part superfluous or inoperative, void or insignificant and so that one section will not destroy another. [Citation.]"

In my opinion, the construction adopted by the majority defeats the obvious legislative purpose which is to regulate the disposition of dead bodies through the licensing of those entities engaged in such disposition. Moreover, the emphasis on the literal meaning of each word or phrase in isolation from the total legislative scheme, renders nonsensical and inoperative significant sections of the relevant codes, to wit, Health and Safety Code sections 7003 and 8340.

The majority concludes that defendant is not a cemetery corporation within the statutory definition of Health and Safety Code sections 7019 and 7020, and is not operating a cemetery which is subject to the provisions of the Cemetery Act. They reach this result because they first conclude that defendant neither makes interments nor performs cremations within the definition of Health and Safety Code sections 7009 and 7010.

It seems to me more appropriate to seek to determine whether a crematory is a cemetery by first examining the definition of cemetery contained in the Health and Safety Code.

Initially, we note that a "crematory" is "a building or structure containing one or more furnaces for the reduction of bodies of deceased persons to cremated remains." (Health & Saf. Code, § 7006.) The majority concedes that defendant operates a crematory within the statutory definition.

Health and Safety Code section 7003 provides: " 'Cemetery' means any one, or a combination of more than one, of the following, in a place used, or intended to be used, and dedicated, for cemetery purposes: [¶] (a) A burial park, for earth interments. [¶] (b) A mausoleum for crypt or vault interments. [¶] (c) A *crematory,* or a crematory and columbarium, for cinerary interments." (Italics added.)

If a crematory is a cemetery, then the place where a crematory is located is a place "used for cemetery purposes," and the operation of a crematory is a "cemetery purpose." "Cemetery purposes" is defined in section 7020 to mean "any and all . . . purposes requisite to, necessary

for, or incident to, establishing, maintaining, operating, improving, or *conducting a cemetery,* interring human remains, and the care, preservation, and embellishment of *cemetery property,* including, but not limited to, any activity or business designed for the benefit, service, convenience, education, or spiritual uplift of property owners or persons visiting the cemetery." (Italics added.) We can sympathize with the trial court and the majority, for not only does this section ignore the elementary principle that a term should not be used to define itself (cemetery purposes are purposes related to operating a cemetery), it refers to the very word (cemetery) that was originally sought to be defined. In other words, this section defines one unknown in terms of itself and another unknown.

Because the section uses the word cemetery to define cemetery, it is useless to seek to learn from section 7020 whether the operation of a crematory is a cemetery purpose without first determining whether a crematory is a cemetery. We must therefore return to the definitional section, Health and Safety Code section 7003.

The trial court, focusing on the underlined phrase in section 7003, paragraph (c) "a crematory, or a crematory and columbarium, *for cinerary interments* [italics added]," and recognizing that the defendant makes no interments, decided that defendant's crematory, i.e., its building containing a retort, is not *for interment,* but just for reduction of the bodies to cremated remains. Neither the trial court nor the majority considered the possibility that a crematory can be *for* interment whether or not the remains are interred on the premises. In fact, it would seem that that is the only reasonable interpretation in the light of the definition of crematory (Health & Saf. Code, § 7006, *supra*)[1] and the fact that section 7003 itself defines cemetery as "any *one,* or a combination of *more than one* [italics added]," of the enumerated categories. The list includes the various places of interment, any one of which could be in combination with a crematory. Moreover, why "a *crematory,* or a *crematory and columbarium,* for cinerary interments [italics added]," if a crematory was not intended to constitute a cemetery except in combination with one of the other categories?

Since the section is obviously ambiguous, it is helpful at this point to follow a cardinal rule of construction, and look to other sections in the statutory plan in an effort to ascertain the legislative intent.

---

[1] A "crematory," as defined in Health and Safety Code section 7006, *supra,* need simply have "one or more furnaces for the reduction of bodies of deceased persons to cremated remains."

Health and Safety Code section 8340 reads as follows: "No *crematory* shall conduct, or shall hereafter be constructed, established, or authorized to conduct, any business unless there is in connection therewith in the same fireproof building or structure or in a separate fireproof building within the same cemetery, either: [¶] A columbarium, a burial park or mausoleum amply equipped at all times for the interment of remains of bodies cremated at the crematory [italics added]." It is apparent from a reading of this section that the Legislature contemplated the possibility of a crematory without any facilities for interment, and decided to require such facilities. Despite the confusion engendered by the definitional sections and the fact that most sections of the codes envision conventional cemeteries, it can hardly be argued, in light of this section, that the codes were not intended to apply to an operation such as defendant's. Based upon the obvious usage of the term in section 8340, I conclude that a crematory, even without interment facilities, is a cemetery within the meaning of section 7003. (See 55 Ops.Cal.Atty.Gen. 402, 405 (1972).)

This construction promotes the legislative purpose and gives effect to every word and sentence of the statutory scheme. Consider the effect of the majority's construction upon sections 7003 and 8340. If a "cemetery" means a crematory only when the crematory has a place for interment on the premises, then any crematory may escape regulation simply by *not* providing a place for interment on the premises. This, of course, constitutes a violation of section 8340, which ceases to be a violation simply because the violation prevents the crematory from being subject to regulation.

It is true that at the time section 8340 was enacted, there was no provision for interment of cremated remains by burial at sea, thus the section in effect required crematories to have available at least one of the then statutory (and now traditional) means of interment. But in 1965 when the Legislature enacted section 7117 providing for burial at sea, it did not amend section 8340. (See Stats. 1931, ch. 1148, §§ 2, 5, pp. 2436-2437; Stats. 1939, ch. 60, §§ 7009, 8340, pp. 670, 701; Stats. 1965, ch. 1421, § 8, p. 3346; see generally 55 Ops.Cal.Atty.Gen. 402, 406 (1972).) Perhaps this was an oversight, perhaps not; and if it was not, perhaps the needs and attitudes of society have since changed to warrant authorization of an operation such as defendant's. In any event, faced with the clear purport of section 8340, defendant's remedy is with the Legislature, not the courts. I conclude that defendant's crematory is within the purview of the provisions of the Business and Professions Code

and Health and Safety Code relating to cemeteries and, within the meaning of those provisions, defendant is operating a cemetery subject to the jurisdiction of plaintiff.[2]

The majority, in an obvious effort to justify their nullification of Health and Safety Code section 8340, raises the spectre of unconstitutionality if the section is applied to defendant's operation.

Although I have considered section 8340 for the limited purpose of ascertaining legislative intent, I am of the opinion that the section remains a reasonable exercise of the police power.

I submit that the addition of burial at sea as a new means of interment does not render unreasonable the requirement of section 8340 that a crematory have available one of the traditional means of interment. I agree with the reasoning expressed in 55 Ops. Cal. Atty. Gen., *supra,* at page 406, as follows: "As stated, a burial park, a mausoleum, and a columbarium have become the traditional places of interment. The legislature has now recognized burial at sea as a lawful means of interment but that recognition should not be construed as a right to operate a crematory exclusively servicing remains to be buried at sea. Thus, even though burial at sea has been recognized as a new means of interment, a requirement that each crematory have available one of the traditional means of interment is well within the broad discretion granted the legislature in the exercise of the police power and we cannot say that such a requirement does not bear a reasonable and substantial relationship to the operation of a crematory and the interment of cremated remains."

Plaintiff, as the state agency charged with administering and enforcing the Cemetery Act, is entitled to judgment enjoining the defendant from operating a cemetery without a certificate of authority as required by the act.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied February 21, 1979. Manuel, J., did not participate therein.

[2]The court also concluded that defendant was not a "cemetery corporation," which is defined in section 7019 to mean "any corporation . . . which is or may be authorized by its articles to conduct any one or more or all of the businesses of a cemetery . . . ." If, as I have concluded, defendant is operating a cemetery, defendant is a cemetery corporation.