[No. B130647. Second Dist., Div. Six. June 26, 2000.]

SAN LUIS COASTAL UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v.
CITY OF MORRO BAY, Defendant and Respondent.

**COUNSEL**

Best Best & Krieger, Howard B. Golds, Michelle Ouellette and Steven M. Anderson for Plaintiff and Appellant.

Hunt & Associates, David R. Hunt and Robert W. Schultz for Defendant and Respondent.

## OPINION

**GILBERT, P. J.**—California's "Wheeling Statutes," Water Code section 1810 et seq., provide for the sale and transfer of water. Here we hold that Water Code section 1810 et seq.[1] allow buyers and sellers to transport water. A school district claimed the right to transport water through a city's water conveyance system pursuant to section 1810. When the city refused, the school district petitioned for a writ of mandate.

The trial court denied the petition on the ground that section 1810 allowed only a transferor of water to demand use of the city's conveyance system, and the school district is a transferee. We reverse. A transferor of water may be either a seller or buyer.

### FACTS

The San Luis Coastal Unified School District (hereafter school district) operates 18 schools in San Luis Obispo County. Three schools are located within the City of Morro Bay. Currently the school district purchases water from Morro Bay for the three schools. It pays more than $180,000 a year for the water.

In the early 1990's, the school district began looking for a less expensive supply of water. In 1993, the school district entered into a water supply agreement with the County of San Luis Obispo Flood Control and Water Conservation District (hereafter the county).

The county agreed to make available to the school district seven acre-feet of water annually. The source of the water is the county's allotment from the State Water Project. The school district agreed to make annual payments to the county for the water.

The contract requires the county to deliver the water to "Reach No. 34." Reach No. 34 is outside Morro Bay. The school district claims it has made arrangements to bring the water to Morro Bay city limits; but to bring the water to the schools it must be carried through facilities belonging to Morro Bay.

The school district began negotiating with Morro Bay for the right to wheel water to the schools located within the city. The school district hired John L. Wallace, a civil engineer, to assist it. Wallace reported that Morro Bay had sufficient unused capacity to wheel the school district's water and

---

[1] All statutory references are to the Water Code.

that $121 per acre-foot was fair compensation for the use of Morro Bay's transmission system.

In September of 1997, the school district requested that Morro Bay hear and determine its water wheeling proposal at a city council meeting. The school district optimistically termed its proposal a "win-win scenario." A Morro Bay public works department staff report recommended, however, that the city council deny the proposal. The report stated that "[the proposal] would result in our City suffering a massive reduction of Water Fund revenue, up to more than $200,000 per year." The report noted that the city would receive only a "nominal fee" calculated at $200 per acre-foot to wheel the school district's water through the city's system. The report concluded that the school district's proposal, if adopted, would require an immediate community-wide water rate increase.

The Morro Bay City Council conducted a public hearing on the school district's proposal on February 28, 1998. The city denied the proposal based on the staff report and public testimony. Instead, the city recommended that the school district save on water costs by adopting conservation measures.

The school district filed a petition for writ of mandate to compel Morro Bay to transport the school district's water through the city's facilities. The school district claimed that section 1810 et seq. imposed a mandatory duty on Morro Bay to transport the district's water through its facilities.

Morro Bay denied the allegations of the petition. It claimed that section 1810 et seq. did not apply. Morro Bay contended that the school district was not a transferor, as contemplated by the statute; Morro Bay's facilities are not conveyance facilities as contemplated by the statute; and that the use of Morro Bay's facilities by the school district will not promote the purpose of the statute, which is water conservation.

The trial court denied the petition. The court reasoned that section 1810 treats the word "transferor" as a seller of water. Because the school district is a transferee, the court concluded that it could not use Morro Bay's water transmission facilities.

DISCUSSION

I

Section 1810 provides in part: "Notwithstanding any other provision of law, neither the state, nor any regional or local public agency may deny a

bona fide transferor of water the use of a water conveyance facility which has unused capacity, for the period of time for which that capacity is available, if fair compensation is paid for that use . . . ."

Morro Bay argues, and the trial court agreed, that the school district does not qualify under the statute because it is a transferee of water, not a transferor. Section 1811, subdivision (a), defines "bona fide transferor" as "any person or public agency . . . with a contract for sale of water . . . ."

Morro Bay claims that the school district has a contract to purchase water, not a contract for sale of water. But a contract for purchase is also a contract for sale. One cannot exist without the other. The Legislature did not specify that the entity with the contract for sale must be the seller. If it had, it might have defined "transferor" as "a person or public agency with a contract to sell water." In the context of the statute, "transferor" does not mean "seller," but an entity that transfers water from one place to another. That is precisely what the school district intends to do.

Moreover, a statutory scheme must be given a reasonable and practical interpretation. (*Stewart v. Board of Medical Quality Assurance* (1978) 80 Cal.App.3d 172, 179 [143 Cal.Rptr. 641].) We see no practical difference whether the transferor or the transferee makes the arrangements for the transportation of the water. It makes no sense to require the transferee to go through the useless formality of making demand for conveyance of water through the transferor.

The dissent believes our interpretation of the statute will give every end user public agency an entitlement to cheaper water. But our interpretation of the statute does not entitle any end user to cheaper water. A public entity can obtain cheaper water only if a person or entity with surplus water is willing to sell it at a cheaper rate.

The dissent also states there is no declared legislative intent to benefit an end user. But the intent is necessarily implied. Unless the end user benefits from the transportation of surplus water, there will be no contract for the sale of the water.

Finally, the dissent states we are adding the words "or transferee" to section 1810. But we are not adding language. As we explained, a "transferor of water" is any entity transferring water from one place to the other, including the school district under the circumstances here.

Morro Bay argues the facilities the school district seeks to use are not "conveyance facilities" as contemplated by the statute. Morro Bay believes

"conveyance facilities" means such systems as aqueducts and canals and not local distribution systems. But local distribution systems as well as aqueducts and canals are facilities used to convey water. Had the Legislature intended to exclude local distribution systems, we assume it would have said so.

Morro Bay claims the school district intends to use more than water conveyance facilities. Morro Bay points out that the school district's plans mention the use of Morro Bay's water storage facilities.

It is true the statutory scheme makes no mention of the use of water storage facilities. To the extent, however, that storage facilities are an integral part of the water conveyance system, incidental use of the storage facilities will be necessary for the transportation of water. Such necessary and incidental use of integrated storage facilities must be considered to be within the scope of the statutory scheme for the conveyance of water. We cannot expand the scope of the statute, however, by interpreting it to include the right of the school district to use Morro Bay's water storage facilities to store water over a period of time greater than that necessary to convey the water through the system.

It is not clear from the record whether the school district's plan includes storage of water in Morro Bay's facilities for a longer time than is necessary to convey the water through the system. If so, Morro Bay has no duty to allow the school district to store its water.

Morro Bay argues that the application of section 1810 et seq. to these facts undermine the policies for which the statutory scheme was enacted. Morro Bay believes the statutes were enacted "in order to promote the efficient use of water through the transfer of conserved water resources." Morro Bay claims the school district is not purchasing water from the county because of a shortage or to increase water conservation. Instead, Morro Bay insists the school district is seeking to increase its use of water and to avoid the cost of the increase.

But nothing in the statutory scheme restricts its use to circumstances involving a shortage of water, or to circumstances in which water will be conserved; and nothing in the statutory scheme prevents a party from using it for the sole purpose of reducing costs. It appears the purpose of section 1810 et seq. is to reduce the cost of transporting water by taking advantage of excess capacity in existing systems.

Morro Bay also claims the application of section 1810 et seq. to these facts will violate policies embodied in other statutes, such as section 385.

Section 385 prohibits the transfer of "surplus water" for use within the boundaries of a public agency that furnishes water service without the consent of the public agency. Suffice it to say that section 1810 begins with the phrase, "Notwithstanding any other provision of law . . . ."

## II

Morro Bay contends section 1810, subdivision (d), applies to prevent the school district from requiring the city to transport its water.

Section 1810, subdivision (d) provides: "This use of a water conveyance facility is to be made without injuring any legal user of water and without unreasonably affecting fish, wildlife, or other instream beneficial uses and without unreasonably affecting the overall economy or the environment of the county from which the water is being transferred."

Morro Bay claims it cannot let the school district use its conveyance facility without injuring other legal users of water within the city. Morro Bay's argument is based on the rate increase it claims its other customers will have to bear if it loses the school district as a customer.

But we do not believe the loss of income from a customer is the sort of injury to a legal user of water the Legislature had in mind. Neither Morro Bay nor its water customers have the right to make the school district purchase any particular amount of water. Although loss of a customer can cause financial difficulties, it does not amount to an injury.

Section 1810 requires the user of the water conveyance system to pay "fair compensation" for the use of the system. Fair compensation is defined as, "the reasonable charges incurred by the owner of the conveyance system, including capital, operation, maintenance, and replacement costs, increased costs from any necessitated purchase of supplemental power, and including reasonable credit for any offsetting benefits for the use of the conveyance system." (§ 1811, subd. (c).) Nothing in the statutory scheme gives Morro Bay the right to deny the school district the use of its water conveyance system because it wants more money.

Morro Bay argues it will be injured because it will jeopardize its water supply agreements with the county and the State of California. Morro Bay claims it has agreed not to allow any other water purveyor to sell within its boundaries and not to assign any portion of its water system.

But the school district is not demanding that Morro Bay make an agreement to allow another water purveyor within its boundaries or to assign any

rights in its water system. The school district is simply demanding that Morro Bay comply with statutes. Following the mandate of the law will not jeopardize any agreement.

## III

Section 1810 potentially applies to the school district's demand for use of Morro Bay's water conveyance facilities. Section 1812 requires, however, that Morro Bay determine the amount and availability of its unused capacity and the terms and conditions of its use, including operation and maintenance requirements, scheduling, quality requirements, term, priorities and fair compensation.

The school district insists that it has met all the statutory criteria. It believes all that is left is to issue a writ of mandate to compel Morro Bay to comply. ■ But mandate applies to compel performance of ministerial duties. (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) Mandate may compel an exercise of discretion, but not control it. (*Bayside Auto & Truck Sales, Inc. v. Department of Transportation* (1993) 21 Cal.App.4th 561, 570 [26 Cal.Rptr.2d 109].) Mandate may not order the exercise of discretion in a particular manner unless discretion can be lawfully exercised only one way under the facts. (*Ibid.*)

■ Here Morro Bay did not determine the matters listed in section 1812 because it incorrectly assumed section 1810 did not apply. On remand the trial court shall order the Morro Bay City Council to determine those matters listed in section 1812.

The school district expresses concern that Morro Bay may not determine the matters listed in section 1812 in a reasonable and timely manner. We have seen no indication of bad faith by Morro Bay. Nevertheless, we think it prudent that the trial court retain continuing jurisdiction to assure compliance with its order. (See *Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 561 [7 Cal.Rptr.2d 848].)

The judgment is reversed for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Coffee, J., concurred.

**YEGAN, J.**—I respectfully dissent. I agree with the trial court's ruling that the San Luis Coastal Unified School District (School) is not a "transferor"

but rather a "transferee" of water. (Wat. Code, § 1811, subd. (a).)[1] As an end user, School may not purchase water from another source and have it delivered through the city's transmission and distribution system at a reduced rate.

I find myself in full agreement with the opening sentence of School's opening brief: "This appeal presents issues of significant financial concern to a public school district in San Luis Obispo County and of enormous legal import to water users in California." School wants more water for itself and wants to pay less for it. The majority seize upon an isolated phrase in section 1811, subdivision (a), to grant School's wish. In doing so, the majority make a significant pronouncement in water law. Every end user public agency in California now has an entitlement to cheaper water. This, of course, affects the rates of all other water users.

Although the majority believe that section 1811 is ambiguous, there is no ambiguity about legislative intent. Section 1 of Statutes 1986, chapter 918 provides: "The Legislature hereby finds and declares as follows: [¶] (a) There has been a severe downturn in the state's agricultural economy which has made it difficult for many farmers to meet their financial obligations to the state or, regional or local public agencies for water facilities already in place. [¶] (b) In addition, many agricultural operations and public agencies experiencing financial difficulties or facing default may desire to sell, lease, or exchange water as a means of obtaining financial relief or augmenting their income. [¶] (c) Since the sale, lease, or exchange of conserved water does not result in the forfeiture of an appropriative right to water, the marketing of water may provide financial relief or supplemental income during periods of economic hardship. [¶] (d) It is the policy of the state to facilitate the voluntary sale, lease, or exchange of water or water rights in order to promote efficient use. [¶] (e) The sales, leases, or exchanges of water are to be made without injuring any legal user of water and without unreasonably affecting fish, wildlife, or other instream beneficial uses and without unreasonably affecting the overall economy of he areas from which the water is being transferred." (Stats. 1986, ch. 918, § 1, p. 3171.) Significantly, there is no declared legislative intent to benefit an end user.

In pertinent part, section 1810 provides that a ". . . local public agency may [not] deny a bona fide transferor of water the use of a water conveyance facility . . . ." Section 1811, subdivision (a) provides: " 'Bona Fide transferor' means a person or public agency as defined in Section 20009 of the

---

[1]All statutory references are to the Water Code unless otherwise stated.

Government Code *with a contract for the sale of water . . . .*"[2] (Italics added.)

The trial court found that School ". . . does not qualify as a bona fide transferor under Water Code sections 1810 and 1811." It relied on Black's Law Dictionary (6th ed. 1990) which defines "transferor" as "[o]ne who makes a transfer" (at p. 1498, col. 1) and "transferee" as "[h]e to whom a transfer is made." (At p. 1497, col. 2.)

The majority reverse based on an isolated reading of section 1811, subdivision (a), and the phrase, "a person or public agency . . . with a contract for sale of water." The majority opinion states: "Morro Bay claims that the school district has a contract to purchase water, not a contract for sale of water. But a contract for purchase is also a contract for sale. One cannot exist without the other. The Legislature did not specify that the entity with the contract for sale must be the seller. If it had, it might have defined 'transferor' as 'a person or public agency with a contract to sell water.' " (Maj. opn., *ante,* at p. 1048.)

Could section 1811, subdivision (a) be more clear? Yes. The Legislature could have said that a bona fide transferor is a public agency with a contract to "sell" water. However, section 1811 must be read in pari materia with section 1810. "Statutes 'in pari materia' are those relating to the same person or thing or having a common purpose." (Black's Law Dict., *supra,* p. 791, col. 1; see also 2B Sutherland, Statutory Construction (5th ed. 1992) § 51.01, p. 117; *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal. Rptr.2d 536, 820 P.2d 1046].) " 'A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." [Citation.]' " (*People v. Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036].)

Applying these principles, I read sections 1810 and 1811 together. A party to a "contract for the sale of water" only applies to a "bona fide transferor," not a transferee or "end user" of water. "A contract for the sale of water" means that the transferor buys and resells the water. School is not in the water business. Nor does it plan to sell water. Providing cheaper water to an end user is not the statutory goal of sections 1810 and 1811. If the majority is correct, section 1810 now reads, ". . . neither the state, nor any regional or local public agency may deny a bona fide transferor *or transferee* the use

---

[2]Government Code section 20009 has been renumbered and is now Government Code section 20056. It defines "Public Agency" as ". . . any city, county, district, other local authority or public body of or within this state."

of a water conveyance facility . . . ." The majority should not be "adding" language to a statute. (*People v. Buena Vista Mines, Inc.* (1996) 48 Cal.App.4th 1030, 1034 [56 Cal.Rptr.2d 21].)

Respondent's petition for review by the Supreme Court was denied October 18, 2000. Baxter, J., was of the opinion that the petition should be granted.