Charles L. FARRAND, Plaintiff–
Appellant,

v.

LUTHERAN BROTHERHOOD, et
al., Defendants–Appellees.

No. 92–2983.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1993.

Decided May 3, 1993.

Opinion Denying Rehearing June 7, 1993.

Raymond J. Hafsten, Jr. (argued), Indianapolis, IN, for plaintiff-appellant.

Robert K. Bellamy (argued), Tim A. Baker, Barnes & Thornburg, Indianapolis, IN, for defendants-appellees.

Before EASTERBROOK and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

*Gilmer v. Interstate/Johnson Lane Corp.,* —— U.S. ——, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), holds that a stockbroker who agrees to arbitrate disputes covered by the rules of the New York Stock Exchange must arbi-

---

* Hon. Albert J. Engel, of the Sixth Circuit, sitting     by designation.

trate with his employer a claim arising under the Age Discrimination in Employment Act. Charles Farrand agreed with the Lutheran Brotherhood financial companies to arbitrate "any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules ... of the organizations with which I register". Gilmer and Farrand signed identical agreements, securities industry Form U–4. But while Gilmer registered with the NYSE, Farrand registered with the National Association of Securities Dealers. We must decide whether the rules of the NASD require arbitration of employment disputes.

■■■ The district court dismissed the suit on the authority of *Gilmer*. The judgment states: "This cause is dismissed without prejudice, provided, however, nothing in Order [sic] shall prevent Plaintiff from arbitrating his claims against Defendants." An order dismissing a complaint "without prejudice" usually is not appealable, because the plaintiff may file an amended complaint. The judgment and accompanying opinion show, however, that no amendment is possible, which makes the order final and appealable. "Without prejudice" means only "without detriment to Farrand's ability to present the claims to an arbitrator." Although the defendants asked the court to "compel arbitration," the judgment rightly does not do so. Farrand may elect between arbitration and accepting his termination; all the judge decreed was that Farrand could not pursue his ADEA claim in court. So 9 U.S.C. § 16(b) does not pose an obstacle to Farrand's appeal—which would in any event be proper because the district court conclusively disposed of all issues in the case. *S + L + H S.p.A. v. Miller–St. Nazianz, Inc.*, 988 F.2d 1518 (7th Cir.1993); *Perera v. Siegel Trading Co.*, 951 F.2d 780 (7th Cir.1992).

■■■ Several district courts have held that persons registered with the NASD must arbitrate disputes arising out of their employment. E.g., *Foley v. Presbyterian Ministers' Fund*, 1992 W.L. 63269 (E.D.Pa.); *Gardner v. Benefits Communication Corp.*, 1991 W.L. 294564 (D.D.C.). None of these opinions quotes the language of the NASD's rules; each assumes that *Gilmer* turned on the clause in the securities industry form rather than the provisions of the exchange's rules.

Yet the form refers only to arbitration "required ... under the rules ... of the organizations with which I register". Rule 347 of the NYSE provides for arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative". The NASD lacks any similar rule. Instead it adopted a Code of Arbitration Procedure, § 1 of which provides:

This Code of Arbitration Procedure is prescribed ... for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(1) between or among members;

(2) between or among members and public customers, or others; and

(3) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledgees or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency.

Section 8 of the Code requires arbitration of all disputes within the scope of § 1.

Lutheran Brotherhood picks out the language "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association" and insists that the NASD's rule is universal. That would be an appropriate reading if the rule stopped at the colon. But it continues with language that the Brotherhood does not mention. The text following the colon establishes which matters are arbitrable. Thus, for example, § 1(2) when read in conjunction with the body of the rule calls for arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association ... between or among members and public customers, or others". At oral argument the Brotherhood seized on "or others", contending that this extends § 1 to all persons. Yet such a read-

ing of "or others" would make all of the words after the colon surplus. What is the point of writing down a list of parties, only to sweep everything off the table with a comprehensive "or others"? Language of this kind in a list usually means "others" *similar to* preceding terms—here, perhaps, clients who for technical reasons cannot properly be called "public customers." Perhaps the term establishes a form of pendent party jurisdiction: "others" may be added to the arbitration of a dispute between a member and a public customer.

It would not exceed the bounds of reason for the NASD or the SEC to conclude that "or others" has the purport Lutheran Brotherhood finds there. But neither the SEC nor the NASD has published an interpretation of this language. The NASD adopted its Code of Arbitration Procedure in 1968, when the rules of such organizations did not require the SEC's approval. Until the 1975 amendments to §§ 15A and 19(b)(1) of the Securities Exchange Act, 15 U.S.C. §§ 78o-3, 78s(b)(1), changes in the NASD's rules became effective unless the SEC objected. The NASD did not have to submit explanations of its rules, and the SEC did not explain why it let them go into force. So there is no paper trail that might assist in interpretation.

The Arbitration Act tells courts to treat arbitration agreements the same as other contracts. 9 U.S.C. § 2. No contract, no arbitration. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). *Gilmer* did not establish a grand presumption in favor of arbitration; it interpreted and enforced the texts on which the parties had agreed. The NYSE's Rule 347 and the NASD's Code of Arbitration Procedure are dissimilar. Bereft of interpretive assistance, we conclude that § 1 of the NASD's Code does not authorize, and § 8 therefore does not require, the arbitration of an employment dispute between a member of the NASD and one of the member's registered representatives. The judgment is reversed, and the case is remanded for adjudication on the merits.

## ON PETITION FOR REHEARING
June 7, 1993.

PER CURIAM.

Our opinion holds that the rules of the National Association of Securities Dealers do not provide for arbitration of employment disputes. Although we acknowledged that the language of the NASD's rules could be stretched to cover such disputes, we concluded that this was not the most natural reading and added: "[N]either the SEC nor the NASD has published an interpretation of this language. The NASD adopted its Code of Arbitration Procedure in 1968, when the rules of such organizations did not require the SEC's approval. Until the 1975 amendments to §§ 15A and 19(b)(1) of the Securities Exchange Act, 15 U.S.C. §§ 78o-3, 78s(b)(1), changes in the NASD's rules became effective unless the SEC objected. The NASD did not have to submit explanations of its rules, and the SEC did not explain why it let them go into force. So there is no paper trail that might assist in interpretation." Majority Op. at 1254.

Defendants now offer us what they say is the Code's "paper trail." They submit three sets of documents: an affidavit of an official of the NASD plus submissions to the SEC in 1980 and 1992. We discuss these presently. More significant than what defendants proffer, however, is what remains missing: an explanation by the NASD or SEC contemporaneous with the adoption of the Code in 1968, or any formal interpretation, by either body, since. These standard interpretive guides being of no avail, defendants have turned elsewhere.

First is an affidavit by Deborah Masucci, a vice president of the NASD who has "been involved in the development of the NASD Code of Arbitration Procedure ... since 1983". This affidavit, dated May 12, 1993, is neither part of the record nor an appropriate guide to interpretation. The Code was adopted 15 years before Masucci acquired her current responsibilities. Her assertion that "[t]he NASD has consistently taken the position that the Code requires arbitration of employment-related disputes" would be more interesting if backed up by documents showing how and where the NASD had taken such a position, but none has been furnished. What we said about legislators' affidavits in

another case is equally apt here, with changes to conform to the administrative context:

Subsequent writings may be nothing but wishful thinking, and unless they are uttered as part of the process of enacting a later law (and therefore show assumptions on which Congress as a whole acted at least once) they are of no account.... Legislative history generated in the course of litigation has even less utility, for it may be designed to mislead, to put an advocate's slant on things. The parol evidence rule does not apply to statutes (if it did, American courts would follow the British practice of disdaining even pre-enactment legislative history), but the concern for accuracy it embodies leads us to draw the line at statements made in Congress. The [parties] have not drawn to our attention any case in which a federal court relied on affidavits written for purposes of litigation as a source of reliable information about the meaning of a statute. California courts have not only admitted affidavits but also allowed legislators to testify about the meaning of statutes. E.g., *Friends of Mammoth v. Board of Supervisors,* 8 Cal.3d 247, 258, 104 Cal.Rptr. 761, 768, 502 P.2d 1049, 1056 (1972); *Stewart v. Board of Medical Quality Assurance,* 80 Cal. App.3d 172, 143 Cal.Rptr. 641 (1978). They have been compellingly criticized, see Comment, *Statutory Interpretation in California: Individual Testimony as an Extrinsic Aid,* 15 U.S.F.L.Rev. 241 (1981), and we shall not import this isolated practice into federal court. Our declining to consider latter-day descriptions will induce Members of Congress to put their thoughts on record when they should—before the bill becomes law, when there is still time for other Members to deny the claims or amend the bills to avoid consequences they do not approve.

*Covalt v. Carey Canada, Inc.,* 860 F.2d 1434, 1438–39 (7th Cir.1988).

Second comes a set of documents concerning the 1980 change to the Code. As adopted in 1968, the NASD's Code dealt with "securities related" disputes. This phrase was deleted in 1980, and defendants (with Masucci's support) say that this alteration shows that the Code covers employment dis-

putes. The change, which is unrelated to any of the language analyzed in our original opinion, establishes nothing of the sort. The documents proposing the amendment do not mention employment disputes, and the SEC's order approving the change reveals a more restrictive understanding. The SEC wrote that the amendment "would conform [the NASD's] present rules on arbitration to the Uniform Code of Arbitration ('Code'). The Code was drafted by the Securities Industry Conference on Arbitration and provides arbitration procedures for the settlement of disputes arising between customers and broker-dealers. The NASD arbitration procedures also apply to disputes arising between members." Release No. 16860, 45 Fed.Reg. 39608 (May 30, 1980) (footnotes omitted). Like the NASD's submission, the SEC's statement approving the amendments does not mention employment disputes.

Third comes the set of documents the NASD submitted to the SEC in December 1992 proposing further changes in the Code of Arbitration Procedure. These documents speak directly to the issue, adding employment disputes to the Code expressly. The NASD proposes to amend § 8 of its Code to require arbitration of any dispute "arising out of the employment or termination of employment of such associated person(s) by and with such member". The explanation for the amendment states that the NASD believes that its Code already covers employment disputes, but that the Association wants to make this clear in the wake of a decision by a state court holding otherwise. As with the Masucci affidavit, the comment does not explain why the existing Code has this scope or where the NASD has previously taken or justified such a position. A simultaneous amendment suggests that the NASD has more than "clarification" in sight: a new § 9(a) of the Code would provide that disputes concerning employment-related contracts, promissory notes, and commissions go to a panel of securities specialists, while other employment disputes would be resolved by arbitral panels having a majority selected from outside the industry. The accompanying explanation states: "In other disputes, involving public policy issues such as employment discrimination and sexual harassment,

there is less need for an industry panel and the interests of the parties may be better served by a panel consisting of a majority of public arbitrators."

To date, the SEC has not acted on this proposal. A change in the Code, rather than a strained interpretation of the current language, is the right way to proceed. Nothing in any of the materials defendants have submitted to us explains how the existing language reasonably can be interpreted to require arbitration of employment disputes. We accordingly adhere to our decision. The petition for rehearing is denied. No judge in active service has called for a vote on the suggestion of rehearing in banc, which therefore fails.