**Leroy ADAMS, et al., Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.**

Civ. A. No. 93–2051–GTV.

United States District Court, D. Kansas.

Jan. 13, 1994.

---

Michael E. Callen, Callen, Sexton & Shelor, Kansas City, KS, Dan M. Norwood, Michelle B. Walters, The Norwood Law Firm, Memphis, TN, for plaintiffs.

Barbara A. Harmon, David J. Waxse, Shook, Hardy & Bacon, Overland Park, KS, Thomas J. Knapp, Lawrence M. Stroik, Charles Shewmake, Burlington Northern R. Co., Ft. Worth, TX, William A. Brasher, Brasher Law Firm, St. Louis, MO, for defendant.

### *MEMORANDUM AND ORDER*

VAN BEBBER, District Judge.

This case is before the court on defendant's motion for certification of interlocutory appeal and for a stay of the district court proceedings pending such appeal (Doc. 44). For the reasons discussed in this Memorandum and Order, the motion is denied.

### I.  *Background*

This is an action brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.,* by several employees of defendant Burlington Northern Railroad Company. The plaintiffs allege that their positions were abolished and that their employer then assigned their duties to less qualified, younger employees.

Burlington Northern was created in 1970 by the merger of several railroads. All of the plaintiffs were employed by the predecessor railroads and are therefore covered by certain provisions called "labor protective conditions." The Interstate Commerce Commission (ICC) imposed these conditions pursuant to § 5(2)(f) of the Interstate Commerce Act, which allows the ICC to approve mergers only if "the employees of the affected rail carrier will be in no worse position related to their employment as a result of the transaction." 49 U.S.C. § 11347. These conditions provided the employees of the merging railroads with certain guarantees and job assurances for the rest of their working lives.

The labor protective conditions applicable to the plaintiffs were taken from pre-merger agreements that the merging railroads had entered into with two labor unions. The ICC ordered that these conditions would apply to all employees, not only employees represented by the unions. These labor union agreements provide that disputes related to any provision of the agreements will be settled by binding arbitration.

On June 30, 1993, defendant filed a motion to dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). In that motion, defendant argued that the plaintiffs' ADEA claims were covered by the arbitration requirement of the ICC order and were therefore subject to the ICC's exclusive jurisdiction. On November 16, 1993, this court issued a Memorandum and Order denying the motion.[1] Defendant now moves that the court certify for interlocutory appeal its decision denying the motion to dismiss for lack of subject matter jurisdiction.

---

1. Defendant also filed a motion to dismiss for failure to allege a condition precedent under Fed.R.Civ.P. 9(c). That motion was also denied by the court in its November 16, 1993, order, but that portion of the order is not included in defendant's current motion.

## II. Discussion

Defendant seeks certification of the court's November 16, 1993, Memorandum and Order pursuant to 28 U.S.C. § 1292(b). An interlocutory order can be appealed under that section only if the district court determines that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the district court makes such a determination, the court of appeals "may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order." *Id.*

Under Section 1292(b), three criteria must be met for proper certification of an order for interlocutory appeal: "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists with respect to that question of law; and (3) an immediate appeal would materially advance the ultimate termination of the case." *Simmons v. City of Kansas City, Kan.,* No. Civ. 88–2603–O, 1992 WL 97806 (D.Kan. Apr. 13, 1992) (O'Connor, J.).

Upon review, the court finds that the November 16, 1993, order fails to satisfy each of the three requisites of Section 1292(b). The court acknowledges that the question of whether the court has subject matter jurisdiction is a controlling question of law. *See Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (holding that a question is "controlling" if error in its resolution would warrant reversal of a final judgment or dismissal). Likewise, an immediate appeal may materially advance termination of the litigation since a reversal of the court's order would end the litigation. The court, however, does not find, despite defendant's arguments to the contrary, that a substantial ground for difference of opinion exists with respect to the controlling question of law.

Defendant argues that there is substantial room for a difference of opinion relating to whether the mandatory arbitration provision should apply to plaintiffs' age discrimination claims. Defendant's first basis for this contention is that even though courts have held that the arbitration provisions imposed under the Interstate Commerce Act are mandatory, none of those cases has involved a statutory claim of discrimination. As a result, there is no clear precedent on this issue.

■ Although there may be no court decisions addressing the exact question at issue here, numerous courts, as detailed below, have ruled on the applicability of mandatory arbitration provisions to statutory claims by employees. The mere fact that a specific issue has not been previously ruled on, or that the question presented is one of first impression, is not in itself sufficient to establish a substantial ground for difference of opinion. *Federal Deposit Ins. Corp. v. First Nat'l Bank,* 604 F.Supp. 616, 620 (E.D.Wis. 1985); *Max Daetwyler Corp. v. Meyer,* 575 F.Supp. 280, 283 (E.D.Pa.1983); *United States ex rel. Hollander v. Clay,* 420 F.Supp. 853, 859 (D.D.C.1976).

■ Defendant next argues that a substantial ground for difference of opinion exists as to the application of the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) to this case. The plaintiff in *Gilmer* had agreed, in his application to register as a securities representative, "to arbitrate any dispute, claim or controversy" arising between him and his employer. *Gilmer,* 500 U.S. at 23, 111 S.Ct. at 1650. After he was dismissed, the plaintiff brought a claim against his employer under the ADEA, arguing that the arbitration agreement which he had signed required the arbitration of only contractual disputes. The Supreme Court concluded that the agreement also required the arbitration of statutory claims and therefore held that the agreement barred plaintiff's ADEA action.

In the November 16, 1993, Memorandum and Order, this court held that *Gilmer* is not controlling precedent under the facts of this case. In particular, *Gilmer* was brought under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.,* which specifically excludes contracts of railroad employees from its scope. Defendant argues that the *Gilmer* opinion is

nevertheless applicable to this case for its endorsement of arbitration as an appropriate means of handling age discrimination claims and to show that there is no inconsistency between the important social policies furthered by the ADEA and enforcing agreements to arbitrate age discrimination claims.

Three important factors distinguish *Gilmer* from the facts in this case. First, as previously mentioned, the *Gilmer* Court relied on the Federal Arbitration Act (FAA) in determining that Gilmer's statutory civil rights claim was subject to arbitration. As the Second Circuit held in *Bates v. Long Island R.R.*, 997 F.2d 1028 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993), the rationale in *Gilmer* does not apply in cases such as this since "the FAA explicitly excludes contracts of railroad employees from its reach." *Id.* 997 F.2d at 1034. The *Gilmer* Court itself distinguished its holding from prior rulings which excluded statutory claims from the scope of arbitration by noting that "those cases were not decided under the FAA, which, as discussed above, reflects a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)).

If, however, this were the only distinction between this case and *Gilmer*, defendant's argument that a substantial ground for a difference of opinion exists may be persuasive. As defendant notes, courts have recognized strong policy reasons for requiring arbitration of disputes arising out of similar labor agreements, even though outside the scope of the FAA. *See Walsh v. United States*, 723 F.2d 570, 575 (7th Cir.1983) (recognizing that mandatory arbitration under labor protective conditions "is in line with strong Federal policy which favors arbitration of labor disputes whether mandated by statute or contractual agreement").

There are, however, two other factors that distinguish this case from *Gilmer*. The first

one relates to the language of the contract which required arbitration. The plaintiff in *Gilmer* agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm ... that is required to be arbitrated under the rules ... of the organizations with which I register." Gilmer registered with the New York Stock Exchange (NYSE) which had a rule providing for arbitration of "[a]ny controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative." *Gilmer*, 500 U.S. at 23, 111 S.Ct. at 1651.

In contrast, the arbitration agreement applicable to the plaintiffs in this case is much narrower in scope. The pre-merger labor union agreements [2] which were made applicable to all employees contain the following arbitration provision:

> In the event any dispute or controversy arises between the Carriers and/or the New Company and the representatives of [the union] with respect to the provisions of an implementing agreement upon which the parties have failed to reach agreement in accordance with Section 8 of this Agreement, the interpretation or application of any provision of this Agreement or of the Washington Job Protection Agreement (except as defined in Section 6 of this Agreement) or of any implementing agreements entered into between the New Company and the representatives of [the union] pertaining to the said merger or related transaction, which cannot be settled by the Carrier and/or the New Company and the representatives of [the union] within thirty days after the dispute arises, such dispute may be referred by either party to a Disputes Committee for consideration and determination.

Rather than providing for resolution of any controversy "arising out of the employment or termination of employment" (the language of the agreement in *Gilmer*), the arbitration

---

**2.** The merging railroads entered into agreements with the Brotherhood of Railroad Trainmen and the Brotherhood of Locomotive Engineers. The ICC ordered that the labor conditions set forth in these agreements would be applied to all employ-

ees affected by the merger who had not entered into separate agreements. There is no evidence that the plaintiffs in this case ever entered into separate agreements relating to the labor conditions.

agreement at issue in this case refers only to disputes related to the pre-merger agreement itself. While the pre-merger agreement contains many provisions related to conditions of employment, it is not all-inclusive like the agreement in *Gilmer.*

The plaintiffs in this case are not alleging any disagreement with their employer over the application of the terms of the pre-merger agreement. Examples of the typical kinds of disputes related to similar railroad merger labor protective conditions can be found in the cases cited in the court's November 16, 1993, Memorandum and Order at 6–7. In contrast, the plaintiffs' amended complaint does not allege that defendant deviated in any way from the terms of the protective conditions or denied them any benefits that they were due under those conditions. Likewise, the defendant has failed to show how the dispute in this case relates to the specific terms of that agreement. The fact that an understanding of those conditions may be necessary to explain the actions taken by defendant involving these plaintiffs does not compel the conclusion that the disputes themselves are related to the terms of those conditions.

Defendant states that it cited *Gilmer* for its endorsement of arbitration as an appropriate means of handling age discrimination claims to show that there is no inconsistency between important social policies furthered by the ADEA and enforcing agreements to arbitrate age discrimination claims. While this interpretation of *Gilmer* is accurate, courts must still examine the underlying agreement to determine whether a particular dispute is one that falls within the scope of the arbitration provision. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)). As the Seventh Circuit recently stated: "The Arbitration Act tells courts to treat arbitration agreements the same as other contracts. No contract, no

arbitration. *Gilmer* did not establish a grand presumption in favor of arbitration; it interpreted and enforced the texts on which the parties had agreed." *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253, 1255 (7th Cir.1993) (citations omitted).

In *Farrand,* the Seventh Circuit refused to require arbitration of a stockbroker's age discrimination claim, even though the stockbroker had signed a securities industry form identical to the one signed by the plaintiff in *Gilmer. Id.* at 1254. That form mandated arbitration of any dispute arising between the stockbroker and his firm "that is required to be arbitrated under the rules ... of the organizations with which I register." *Id.* Gilmer registered with the NYSE which had adopted the arbitration rule quoted earlier. Farrand, however, registered with the National Association of Securities Dealers (NASD). After the court examined the NASD's arbitration rules, it concluded that the rules were distinguishable from those of the NYSE and that they did not require arbitration of employment disputes.

Likewise, the contract language in this case does not mandate arbitration of every employment-related dispute. Unlike *Gilmer,* there is no evidence that the plaintiffs' claims fall within the language of the arbitration provision.

The final factor distinguishing this case from *Gilmer* relates to the type of agreement in which the arbitration provision is contained. As described above, Gilmer entered into an individual agreement with his employer in which he agreed that certain disputes would be arbitrated. In contrast, the arbitration agreement in the instant case was taken from labor union agreements and then made applicable to all employees.

This distinction has been recognized by the Second Circuit in *Bates v. Long Island R.R.,* 997 F.2d 1028 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993), which upheld the right of railroad employees to bring an action in federal court under the Rehabilitation Act despite the existence of an arbitration procedure prescribed under the Railway Labor Act. Similarly, the court in *Claps v. Moliterno Stone Sales, Inc.,* 819 F.Supp. 141 (D.Conn.1993) held that an em-

ployee's failure to exhaust grievance procedures under a collective bargaining agreement did not bar her Title VII action. In that case the court stated that the *Gilmer* Court "made it clear that its holding in *Gilmer* simply applied to contracts made by employees individually." *Claps*, 819 F.Supp. at 147. Thus, even if plaintiffs' claims were encompassed within the scope of the labor protective conditions, this court would not be divested of jurisdiction over the statutory ADEA action.

The purpose of this detailed analysis is to better explain the court's reasoning in distinguishing this case from *Gilmer* and relying instead on the Supreme Court's pre-*Gilmer* line of cases to analyze the instant case.

There are three major pre-*Gilmer* cases dealing with the issue of arbitration of statutory claims. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that an adverse arbitration decision did not bar a discharged employee from suing under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* In *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Court reached the same result concerning a claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* Finally, in *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Court held that an arbitration decision did not preclude a discharged public employee from suing on the ground that the discharge violated his constitutional rights under 42 U.S.C. § 1983.

In *Gilmer*, the Court explained that *McDonald* and the prior cases "did not involve the issue of the enforceability of an agreement to arbitrate statutory claims" but rather "the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." *Gilmer*, 500 U.S. at 34–35, 111 S.Ct. at 1656–57. Since the merger agreement in this case did not require arbitration of statutory claims, this case falls within the *Gardner–Denver–Barrentine–McDonald* line of cases.

In its final argument for finding the existence of a substantial ground for difference of opinion, defendant points to the application of the pre-*Gilmer* line of cases, particularly *Gardner–Denver*, to the facts of this case. Defendant contends that a reasonable interpretation is that *Gardner–Denver* stands only for the proposition that an employee who has already completed arbitration is not precluded from later bringing a statutory discrimination claim.

A better interpretation is that the Supreme Court recognized that arbitration required under a collective bargaining agreement should not be the sole remedy for claims based on statutory rights. Nothing in the *Gilmer* decision changes this. The *Gilmer* Court itself, in discussing the earlier cases, noted "the difference between contractual rights under a collective-bargaining agreement and individual statutory rights." *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657.

Defendant would first require the plaintiffs to arbitrate both their contractual and statutory claims, as the plaintiff in *Gilmer* was required to do. Defendant next argues that even if the plaintiffs had some right to have their statutory claims heard in court, they must first complete the arbitration process. In this case, however, the plaintiffs' claims do not implicate the contract. As explained earlier, the contract language simply does not encompass all disputes arising out of employment. Under this framework, there is no basis for requiring plaintiffs to complete arbitration prior to bringing their statutory claims. *See Claps*, 819 F.Supp. at 147 (holding that plaintiff's failure to exhaust available grievance procedures does not bar her Title VII claims).

### III. Conclusion

Based on the foregoing discussion, the court concludes that its November 19, 1993, ruling does not create a substantial ground for difference of opinion sufficient to justify an interlocutory appeal under Section 1292(b). First, the presumption favoring arbitration in disputes involving railroad merger protective conditions does not apply here since the application of those conditions is not in dispute. Second, while the resolution

of statutory discrimination claims represents an evolving area in the law, the recent Supreme Court decisions on this subject are clear with regard to their application to this case.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for certification of interlocutory appeal (Doc. 44) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**