United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued January 13, 1999 Decided February 23, 1999 

 No. 98-7054

 Sandra Kaye Gardner, 

 Appellant

 v.

 Benefits Communications Corporation, et al., 

 Appellees

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 91cv00536)

 Richard A. Salzman argued the cause for appellant. With 
him on the briefs was Douglas B. Huron.

 John M. Husband argued the cause for appellees. With 
him on the brief were Brian M. Mumaugh, Anthony Herman 
and Christine L. Kurek.


 Before: Edwards, Chief Judge, Williams and Henderson, 
Circuit Judges.

 Opinion for the Court filed by Chief Judge Edwards.

 Edwards, Chief Judge: Almost eight years ago, Sandra 
Kaye Gardner filed suit against her employer, Benefits Com-
munications Corporation ("BCC"), as well as against several 
other institutional and individual defendants, asserting statu-
tory claims of employment discrimination and retaliation. 
The District Court initially ordered Gardner to arbitrate her 
claims, on the assumption that her registration with the 
National Association of Securities Dealers ("NASD"), which 
was completed as a condition of Gardner's employment with 
BCC, required Gardner to arbitrate claims of the sort at issue 
in this case. Because the District Court refused to certify an 
appeal to this court on that issue, this appeal represents the 
first opportunity that Gardner has had to challenge the 
District Court's order compelling arbitration. Moreover, be-
cause the arbitration has already occurred, Gardner also now 
challenges the propriety of the arbitration award.

 This litigation has languished far longer than necessary; it 
is therefore regrettable that our disposition will prolong this 
case even further. This result is unavoidable, however, be-
cause Gardner's claims against BCC are not subject to man-
datory arbitration. If all of the original defendants remained 
as parties to this lawsuit, we might face two difficult ques-
tions: whether a fair reading of Gardner's NASD registration 
indicates her agreement to submit the instant claims to 
arbitration, and, if so, whether arbitration lawfully may be 
compelled pursuant to the purported agreement. These are 
moot questions, however, for Gardner has agreed to dismiss 
all defendants save BCC. With BCC as the sole defendant, 
there is no doubt that Gardner is not required to arbitrate 
her claims in lieu of having the case heard in District Court.

 Accordingly, we remand this case to the District Court for 
further proceedings to address the merits of Gardner's claims 
against BCC. In light of this disposition, it is unnecessary to 
resolve Gardner's additional claim that the disputed arbitra-
tion award should be set aside under Cole v. Burns Interna-
tional Security Services, 105 F.3d 1465 (D.C. Cir. 1997).

 I. Background 

 BCC provides plan enrollment services for consumers of 
group and individual life insurance plans. The company is a 
wholly owned subsidiary of the Great-West Life Assurance 
Company ("Great-West"), a Canadian-based insurance com-
pany that sells group and individual life, health, and annuity 
products. BCC is also a director of BenefitsCorp Equities, 
Inc. ("BCE"), a limited broker-dealer in the annuity and life 
products market. BCC is not a member of NASD; however, 
both Great-West and BCE are members of NASD.

 Gardner began working for BCC in the fall of 1989 as an 
Employer Sponsored Specialist. In this position, Gardner 
sold retirement-related insurance products and securities to 
participants in employer-sponsored pension plans. Because 
Gardner sold securities for BCC through BCE, she was 
required to register as an agent with NASD as a condition of 
her employment. Accordingly, on September 11, 1989, she 
executed a Uniform Application for Securities Industry Reg-
istration or Transfer, widely known as a "U-4 form," to 
satisfy this requirement. See Joint Appendix ("J.A.") 58-61.

 For most of Gardner's tenure at BCC, her immediate 
supervisor was Craig Wolpert. According to Gardner, Wol-
pert did not like her and sought to get rid of her because she 
was "a big woman." Brief for Appellant at 5. Gardner 
alleges that she complained of Wolpert's discriminatory treat-
ment to the upper management of her company, but Wolpert 
was never reprimanded for his behavior. See Brief for 
Appellant at 6; Complaint p 11, reprinted in J.A. 25. Gard-
ner additionally claims that Wolpert not only continued his 
discriminatory treatment after her internal complaint, but 
also launched a campaign of retaliation in response to it. See 
Complaint p 12, reprinted in J.A. 25.

 Due to Wolpert's allegedly discriminatory treatment and 
abuse, Gardner asserts she was forced into treatment for 
anxiety and depression. On October 11, 1990, Gardner suf-
fered a panic attack and asked for sick leave due to her 
illness. Instead of granting Gardner's request, Wolpert 
placed Gardner on disciplinary probation and sought a re-

placement for her. See Memorandum from Craig Wolpert to 
Kaye Gardner (Oct. 11, 1990), reprinted in J.A. 128; Adver-
tisement, Washington Post, Oct. 14, 1990, at K33, reprinted in 
J.A. 129. Gardner went on extended medical leave, and 
finally resigned from BCC in early 1991. See Brief for 
Appellant at 7; Complaint pp 13-14, reprinted in J.A. 25-26. 
Thereafter, she was employed by Liberty Securities, but at a 
much lower salary. In 1991, 1992, and 1993, Gardner earned 
$19,739, $15,823, and $25,000, respectively, compared to the 
roughly $53,500 she had earned at BCC. See J.A. 155.

 In April 1991, Gardner filed suit in District Court against 
BCC, Great-West, and BCE, as well as against corporate 
officers Wolpert and Charles Nelson, Wolpert's direct super-
visor, asserting claims of employment discrimination and 
unlawful retaliation under the D.C. Human Rights Act (the 
"Human Rights Act"), D.C. Code Ann. ss 1-2501 to 1-2557 
(1981 & Supp. 1998). See Complaint pp 1, 6, reprinted in J.A. 
21-22, 23. She alleged that she had been subjected to sex 
discrimination and unlawful retaliation by Wolpert, and that 
the other defendants either knew or should have known of 
Wolpert's actions, but nevertheless allowed it to continue. 
See id.pp 9-10, 12, 15, reprinted in J.A. 24-26.

 In response to Gardner's complaint, the defendants, all 
represented by the same counsel, moved to compel arbitra-
tion of the case, arguing that Gardner had agreed to arbitrate 
this type of dispute when she registered with the NASD. 
Gardner opposed this motion, but the District Court, relying 
on Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 
(1991), found that the NASD Code of Arbitration Procedure 
("NASD Code") mandated arbitration of this dispute. See 
Gardner v. Benefits Communications Corp., No. 91-0536 
(D.D.C. Dec. 31, 1991) (memorandum), reprinted in J.A. 8-9. 
Gardner then sought reconsideration of the referral to arbi-
tration from the District Court, or, in the alternative, certifi-
cation for interlocutory appeal. The District Court denied 
this motion, and Gardner was forced to go to arbitration. See 
Gardner v. Benefits Communications Corp., No. 91-0536 


(D.D.C. June 16, 1992) (memorandum order), reprinted in 
J.A. 11-13.

 On January 7, 1993, Gardner submitted her claims to 
NASD. A hearing was held before a panel of three arbitra-
tors on January 27 through February 1, 1994. On April 11, 
1994, the panel entered a decision in favor of Gardner, but 
awarded her only $15,000. See Gardner Arbitration Award, 
reprinted in J.A. 110-15. The arbitration panel also assessed 
$3,000 in "forum fees" against Gardner. See id. at 113.

 On April 28, 1994, only seventeen days after the panel 
decision was issued, Gardner promptly sought a new trial 
date from the District Court, arguing that the court should 
reconsider its prior ruling compelling arbitration, that the 
arbitration award was not final and did not preclude a de 
novo trial of Gardner's claims, and that the arbitrators had 
erred in their award. However, it was almost four years 
before the District Court acted on Gardner's motion. In fact, 
on January 20, 1995, about nine months after moving for a 
trial date, Gardner returned to the District Court to plead for 
a final determination in her case; this plea fell on deaf ears, 
for over three more years passed before the District Court 
ruled on Gardner's motion. Finally, on March 12, 1998, the 
District Court denied Gardner's request for a new trial, but 
modified the NASD award in two ways. See Gardner v. 
Benefits Communications Corp., No. 91-0536 (D.D.C. Mar. 
12, 1998) (order), reprinted in J.A. 20. First, the trial court 
found that the assessment of "forum fees" against Gardner 
was unlawful under Cole v. Burns International Security 
Services, 105 F.3d 1465 (D.C. Cir. 1997); accordingly, the 
assessment of $3,000 against Gardner in forum fees was 
struck from the NASD award. See Gardner v. Benefits 
Communications Corp., No. 91-0536 (D.D.C. Mar. 12, 1998) 
(memorandum), reprinted in J.A. 17. In addition, the trial 
court found that Gardner was the prevailing party and, thus, 
was entitled to attorney's fees and costs. See J.A. 17-18. 
The District Court, however, stayed the petition for attor-
ney's fees pending her appeal to this court.

 II. Analysis

 On appeal, Gardner argues, inter alia, that it was improper 
for the District Court to compel arbitration of her statutory 
discrimination claims against BCC. In order to determine 
the propriety of this decision, we must examine the language 
of Gardner's U-4 form as well as the language of the NASD 
Code and By-Laws.

 The fifth paragraph of the U-4 form signed by Gardner 
states, "I agree to arbitrate any dispute, claim or controversy 
that may arise between me and my firm, or a customer, or 
any other person, that is required to be arbitrated under the 
rules, constitutions, or by-laws of the organizations with 
which I register." J.A. 61. Gardner registered only with 
NASD, and thus we must look to NASD's rules and by-laws 
in effect when Gardner filed suit to determine whether her 
discrimination claims were subject to the arbitration clause. 
See Seus v. John Nuveen & Co., 146 F.3d 175, 187 (3d Cir. 
1998) ("Most courts have found that the Form U-4 compli-
ance clause obligates a registrant to comply with the NASD 
Arbitration Code as it existed at the time she filed suit."). 
Accordingly, all references herein to NASD rules and by-laws 
are to those that were in effect in 1991.

 Section 1 of the NASD Code describes those disputes that 
are eligible for arbitration:

 This Code of Arbitration Procedure is prescribed and 
 adopted pursuant to Article VII, Section 1(a)(3) of the 
 By-Laws of the National Association of Securities Deal-
 ers, Inc., (the Association) for the arbitration of any 
 dispute, claim, or controversy arising out of or in connec-
 tion with the business of any member of the Association, 
 with the exception of disputes involving the insurance 
 business of any member which is also an insurance 
 company:

 (1) between or among members;

 (2) between or among members and public customers, 
 or others; and

 (3) between or among members; registered clearing 
 agencies with which the Association has entered 

 into an agreement to utilize the Association's arbi-
 tration facilities and procedures; and participants, 
 pledges, or other persons using the facilities of a 
 registered clearing agency, as these terms are 
 defined under the rules of such a registered clear-
 ing agency.

In addition, s 8 of the Code provides that the following 
disputes must be submitted to arbitration:

 (a) Any dispute, claim or controversy eligible for sub-
 mission under Part I of this Code between or among 
 members and/or associated persons, and/or certain oth-
 ers, arising in connection with the business of such 
 member(s) or in connection with the activities of such 
 associated person(s), shall be arbitrated under this Code, 
 at the instance of:

 (1) a member against another member;

 (2) a member against a person associated with a mem-
 ber or a person associated with a member against a 
 member; and,

 (3) a person associated with a member against a per-
 son associated with a member.

 Appellees argue that ss 1 and 8 of the NASD Code man-
date arbitration of Gardner's claims, because both defendants 
BCE and Great-West are NASD members. Under s 1(2), 
disputes between members and "others" may be arbitrated, 
and s 8(a)(2) requires arbitration of disputes between a mem-
ber and "a person associated with a member." The NASD 
By-Laws, Art. I, p 1101(m), defines "person associated with a 
member" or "associated person of a member" as:

 every sole proprietor, partner, officer, director, or branch 
 manager of any member, or any natural person occupy-
 ing a similar status or performing similar functions, or 
 any natural person engaged in the investment banking or 
 securities business who is directly or indirectly control-
 ling or controlled by such member, whether or not any 
 such person is registered or exempt from registration 
 with the [NASD] pursuant to [the NASD By-Laws].

The defendants argue that Gardner qualifies as a "person 
associated with a member" and an "other[ ]," and thus, this 
matter was properly arbitrated.

 The circuits that have considered the issue have split over 
whether and on what terms these provisions require arbitra-
tion of employment disputes between a member-employer 
and a registered employee. See generally Thomas James 
Assocs., Inc. v. Jameson, 102 F.3d 60, 64 (2d Cir. 1996) 
(describing the various interpretations of these provisions by 
the different circuits). See, e.g., Farrand v. Lutheran Bhd., 
993 F.2d 1253, 1254-55 (7th Cir. 1993) (finding that an 
employment dispute was not arbitrable, because although 
s 1's three subsections ((1)-(3)) qualified the phrase "arising 
out of or in connection with the business of any member of 
the [NASD]," an employee suing an member-employer was 
not an "other[ ]" within the meaning of s 1(2)); Kidd v. 
Equitable Life Assurance Soc'y of the United States, 32 F.3d 
516, 519 (11th Cir. 1994) (holding that an employment dispute 
must be arbitrated, because s 1 "requires arbitration for any 
dispute connected to an NASD member's business, except for 
disputes involving the insurance business of an NASD mem-
ber that are (1) between NASD members or (2) between 
NASD members and public customers or others"); Armijo v. 
Prudential Ins. Co. of Am., 72 F.3d 793, 798-99 (10th Cir. 
1995) (finding an employment dispute arbitrable, because the 
term "others" in s 1(2) necessarily encompassed "associated 
persons" as used in s 8, and therefore included an aggrieved 
employee).

 It is unnecessary for us lend our voice to this controversy 
over the meaning of ss 1 and 8 of the NASD Code, for 
Gardner has agreed to dismiss all defendants save BCC. 
With this dismissal it becomes indisputably clear that the real 
dispute in this case is not between a member-employer and a 
registered employee. Rather, the dispute here is between a 
non-member employer, BCC, and its registered employee, 
Gardner; and, as we will explain below, this difference is 
determinative of the issue at hand.


 This renovation of the case is hardly surprising, given its 
true nature. Because the Human Rights Act defines "employ-
er" very broadly, see D.C. Code Ann. s 1-2502(10), Gardner 
joined BCE, Great-West, Wolpert, and Nelson as co-
defendants to this action out of an abundance of caution. Yet, 
these defendants are in no sense necessary parties to the 
lawsuit. The dispute here is and always has been between 
Gardner and BCC. Indeed, appellees conceded as much in 
their motion papers in the District Court, where they stated 
that this "action arises out of Gardner's employment with 
BCC, her acceptance of that employment, and her resulting 
allegations that she was treated discriminatorily on account of 
her sex." See Memorandum Brief in Support of Defendant's 
Motion to Compel Arbitration at 8, reprinted in J.A. 39; see 
also id. at 2, reprinted in J.A. 33 ("Gardner filed her com-
plaint and has raised claims relating to her employment with 
[BCC]."). Gardner also has made it clear that her claims are 
principally focused on the actions of BCC. See, e.g., Plain-
tiff's Opposition to Motion to Compel Arbitration at 5, re-
printed in J.A. 68 ("[P]laintiff was employed by BCC, paid by 
BCC, received her accounts from BCC and was subjected to 
discriminatory treatment from her two immediate supervi-
sors, both of whom were employees of BCC."). In other 
words, Gardner's agreement to dismiss all defendants except 
BCC merely shapes the litigation in a way that comports with 
the reality of what is genuinely at stake in this case.

 With this turn of events, it is unnecessary for us to 
determine the reach of ss 1 and 8 of the NASD Code. It is 
also unnecessary to decide whether the purported mandatory 
arbitration clauses under the NASD Code, or the disputed 
arbitration award in this case, transgress the commands of 
Cole v. Burns International Security Services, 105 F.3d 1465 
(D.C. Cir. 1997). Our avoidance of these knotty issues is 
additionally fortuitous in light of the fact that NASD recently 
has amended its arbitration procedures to provide that statu-
tory employment disputes are no longer required to be 
arbitrated in any circumstances. See NASD Notice to Mem-
bers 98-56: SEC Approves Rule Change Regarding Arbitra-
tion of Statutory Employment Disputes; Effective January 


1, 1999 (visited Feb. 1, 1999) <http://www.nasd.com/ 
notices/9856ntm.txt>; Reply Brief for Appellant at 6 n.4.

 Our authority to accept Gardner's agreement to dismiss all 
defendants except BCC comes from well established prece-
dent. Federal Rule of Civil Procedure 21 provides that 
"[p]arties may be dropped or added by order of the court on 
motion of any party or of its own initiative at any stage of the 
action and on such terms as are just." Although this rule 
literally pertains only to the district courts, see Fed. R. Civ. P. 
1, the Supreme Court has held that "the policies informing 
Rule 21 may apply equally to the courts of appeals." 
Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 
(1989). This appellate power "long predates the enactment of 
the Federal Rules." Id. at 834. Indeed, Justice Story, 
sitting as Circuit Justice, wrote that " '[t]here is ... in the 
nature of an appellate jurisdiction, nothing which forbids the 
granting of amendments,' " and that "this ... power [derived] 
from 'the course of the common law,' " which afforded the 
higher court the same amendment power as the lower one. 
Id. (quoting Anonymous, 1 F. Cas. 996, 997 (No. 444) (CC 
Mass. 1812)) (alteration in original); see also Mullaney v. 
Anderson, 342 U.S. 415, 416-17 (1952) (granting union's mo-
tion to add two of its members as parties in order to avoid 
deciding standing issue); Balgowan v. New Jersey, 115 F.3d 
214, 216-17 (3d Cir. 1997) (allowing a group of engineers who 
sued the New Jersey Department of Labor for violations of 
the Fair Labor Standards Act to add Department's Commis-
sioner as a party to suit while case was on appeal, because 
court did not have jurisdiction over engineers' claim against 
state for monetary relief).

 This case falls within the compass of those decisions in 
which the appellate power to add or dismiss parties may be 
exercised. First, it is clear that this dispute always has been 
between Gardner and BCC, and Gardner has indicated to this 
court that she is willing to dismiss the four unnecessary 
defendants. See Reply Brief for Appellant at 7-8 n.6; Appel-
lant's Response to Court's Order (Jan. 14, 1998). These are 
compelling considerations, especially given the absence of any 
real prejudice to other parties.


 Second, the absence of prejudice cannot seriously be chal-
lenged. BCE, Great-West, Wolpert, and Nelson face no 
prospect of future litigation on the current claims, because 
the actions against them are hereby dismissed with prejudice. 
And BCC's potential liability to Gardner under the Human 
Rights Act is not affected in any way by the absence of the 
other defendants from this case. Although it appears that 
"individual supervisors can be held liable for their acts of 
discrimination," Martini v. Federal Nat'l Mortgage Ass'n, 977 
F. Supp. 464, 479 (D.D.C. 1997), this liability is separate and 
apart from that of the employer. See id. at 474-79; Howard 
Univ. v. Best, 484 A.2d 958, 983-84 (D.C. 1984). BCC's 
liability also will not be altered due to the absence of BCE 
and Great-West, because BCC's liability is based on the 
actions of supervisors in its employ, and on what it did and 
did not do to with respect to Gardner's claims. See Best, 484 
A.2d at 983-84. Thus, because BCC's liability is separate 
from that of the other defendants, there is no prejudice from 
their dismissal.

 Finally, we note that Gardner has acted in a timely manner 
throughout this litigation. She initially requested an interlocu-
tory appeal prior to arbitration, which was denied by the 
District Court. She responsibly decided not to appeal that 
decision, because it seemed futile: in most of the circuits that 
had addressed the issue, Gardner's action would have been 
viewed as an "embedded" claim, and, as such, she would have 
been precluded from taking an appeal until after the District 
Court dismissed her action or issued some other final judg-
ment with respect to her case. See Ermenegildo Zegna Corp. 
v. Zegna, 133 F.3d 177, 182-83 (2d Cir. 1998) ("[W]hen the 
defendant introduces the arbitration question into a pending 
action, the case is typically considered embedded," and, as 
such, an interlocutory appeal without certification is not ap-
propriate, "even when the order directs arbitration of all of 
the parties' claims and leaves nothing further for the district 
court to determine until the issuance of the arbitral award."); 
cf. Cole, 105 F.3d at 1470 (allowing appeal where District 
Court's order compelling arbitration also dismissed the plain-
tiff's complaint); McCarthy v. Providential Corp., 122 F.3d 

1242, 1247-49 (9th Cir. 1997) (Pregerson, J., dissenting) (dis-
cussing the difference between an action that is stayed pend-
ing arbitration, and one that is dismissed after arbitration is 
compelled). Because there was no final judgment in this case 
until March 12, 1998, Gardner was forced to wait until now to 
raise her arbitrability and enforcement questions before this 
court. Thus, although an unseemly amount of time has been 
spent on this litigation, most of the delay has been attribut-
able to the District Court, not the parties.

 With BCC as the sole defendant, we have no serious doubt 
in reaching the conclusion that Gardner is not required to 
arbitrate her claims in lieu of proceedings in District Court to 
address her complaint. Although there is some question as 
to whether s 1 of the NASD Code includes disputes between 
persons associated with NASD members, see Farrand, 993 
F.2d at 1254-55, we will assume that such disputes fall within 
the ambit of arbitrable claims under the pre-amendment 
NASD Code. It appears that Gardner falls within the defini-
tion of "person associated with a member," because she is a 
natural person who was engaged in the securities business 
and sold securities through NASD member BCE. See NASD 
By-Laws, Art. I, p 1101(m). The question, then, is whether 
BCC is a "person associated with a member."

 We agree with our colleagues on the Fifth Circuit that, 
when the definition is read in its entirety, it is clear that it 
includes only natural persons. See Tays v. Covenant Life 
Ins. Co., 964 F.2d 501, 502-03 (5th Cir. 1992). Although the 
second and third clauses explicitly include only "any natural 
person," all three of the clauses are limited by the last phrase 
of the definition, which reads "whether or not any such 
person is registered or exempt from registration with the 
[NASD] pursuant to [the NASD By-Laws]." NASD By-
Laws, Art. I, p 1101(m) (emphasis added). This reference to 
"any such person," rather than "any such entity" or the like, 
leads us to believe that the NASD intended to limit the 
parties who could be considered a "person associated with a 
member" to only those parties that are natural persons.

 Moreover, this interpretation is "reinforced when the defi-
nition is compared with the statutory definition [of associated 


person] contained in the Securities Exchange Act of 1934, 15 
U.S.C. s 78c(a)(21)." Tays, 964 F.2d at 503. That act pro-
vides that "[t]he term 'person associated with a member' or 
'associated person of a member' when used with respect to a 
member of a national securities exchange or registered secu-
rities association means any partner, officer, director, or 
branch manager of such member (or any person occupying a 
similar status or performing similar functions), any person 
directly or indirectly controlling, controlled by, or under 
common control with such member, or any employee of such 
member," 15 U.S.C. s 78c(a)(21) (1994), and that the term 
"person" includes "a natural person, company, government, or 
political subdivision, agency, or instrumentality of a govern-
ment," 15 U.S.C. s 78c(a)(9). The NASD By-Laws do not 
define the term "person." However, the NASD definition of 
associated person includes the phrases "natural person" and 
"any such person," which are not present in the Securities 
Exchange Act's definition. Thus, we agree with the Fifth 
Circuit that these "changes from the statute to the NASD by-
laws suggest a desire to limit the NASD definition to natural 
persons." Tays, 964 F.2d at 503.

 Accordingly, a corporation such as BCC does not qualify as 
an associated person under this definition, and arbitration of 
the dispute between Gardner and BCC is not required. We 
therefore reverse the District Court's order compelling arbi-
tration and remand the case for further proceedings to ad-
dress the merits of Gardner's complaint.

 III. Conclusion

 For the foregoing reasons, we dismiss with prejudice Bene-
fitsCorp Equities, Inc., Great-West Life Assurance Company, 
Craig Wolpert, and Charles Nelson from this action. We also 
reverse the judgment of the District Court compelling arbi-
tration, and remand this case between Benefits Communica-
tions Corporation and Gardner to the District Court for 
further proceedings to address the merits of Gardner's 
claims.

 So ordered.